STATE OF INDIANA ET AL v. TOLLIVER ET AL.

[No. 30,188. Filed April 9, 1965.]

320

*Edwin K. Steers,* Attorney General, *William C. Barnard, Sue Blodgett Shields* and *James F. Gallagher,* Deputy Attorneys General, for appellants.

*Wallace & Wallace, James B. Wallace, Ward S. Williams,* of Covington, and *Lewis & Lewis,* and *Jerdie D. Lewis,* of Terre Haute, for appellees.

MYERS, J.—This is an appeal from a judgment of the Superior Court of Vigo County in proceedings brought by appellees, Leland W. Tolliver and Opal Tolliver, wherein they alleged the taking of land by appellants without condemnation, in that a county road was closed so that a limited access interstate highway could be established. A jury rendered a verdict in favor of appellees and awarded them $13,500 as damages plus interest.

The facts most favorable to appellees are as follows: Appellees owned real estate located on a county gravel road in Vermillion County, known as Foster Road, near the little town of Gessie. A small-sized steel fabricating plant had been constructed thereon which was operated by appellees. Raw steel and iron were delivered by truck to their factory from which they designed and fabricated ornamental products which were sold and used for the decoration of buildings and their interiors. The raw materials and finished products were transported to and from the factory over Foster Road to U. S. Highway 136, which is a main thoroughfare for vehicular traffic of all kinds running east and west between Danville, Illinois, and Indianapolis, Indiana. U. S. Highway 136 was the only improved public road

available to appellees by which they could reach other improved roadways for the receipt of raw materials and the delivery of their products to various parts of the State of Indiana. Foster Road runs north and south, and from the location of appellees' property it is about one and one-half miles north to where Foster Road intersects with U. S. Highway 136. These roadways had been used in their business since August, 1952.

In 1959, the State of Indiana and the Board of County Commissioners of Vermillion County, acting together, closed Foster Road between appellees' real estate and the intersection with U. S. Highway 136 in order to permit a limited access highway known as Interstate 74 to be constructed in an east-west direction parallel to U. S. 136. A barrier was placed on Foster Road where it ran into Interstate 74 so that no one could proceed northward across the Interstate highway. A cul-de-sac was created by these actions, so that appellees' only means of entrance and exit from their property was to the south on Foster Road. This required the crossing of a bridge over a creek just south of appellees' real estate which was in "bad shape" and had a load limit of 3000 pounds. It was not of sufficient strength to support the trucks which hauled steel and the finished products pertaining to appellees' business, sometimes as much as fifty tons of steel.

It is to be noted that appellees' land did not abut the new Interstate highway. Between it and appellees' property there was a strip of land approximately fifty or seventy-five feet in width which was owned by some one else.

After Foster Road was closed to the north, appellees could only use Foster Road to the south which required traveling over the county bridge and following a circuitous route which was not only hazardous but costly. In order to continue their manufacturing business,

they purchased land one-fourth mile north of U. S. 136, constructed a new factory thereon and abandoned the property in controversy for business purposes.

Appellants have not paid or offered to pay appellees for the loss of access to their real estate, nor have they brought any actions in condemnation to acquire appellees' property interest therein. Consequently, appellees brought this action to recover their alleged loss in such property interest.

This cause started in Vermillion County on July 10, 1959, when appellees filed their complaint in the Circuit Court asking for damages and temporary injunction. There was a hearing on the temporary restraining order which resulted in denying the issuance of such an order.

On August 12, 1959, appellees filed their amended complaint in which they generally alleged their use of Foster Road for access to the north and U. S. 136; that the appellants were threatening to deprive appellees of their right to ingress and egress to and from their factory by the construction of Interstate 74 in an east and west direction leaving appellees' land abutting on a cul-de-sac; that no compensation was tendered or paid by appellants; that no condemnation proceedings were undertaken; that appellees' real estate prior to the construction of Interstate 74 was of the fair market value of $75,000, but after the creation of the culde-sac and taking appellees' right of ingress and egress to U. S. 136, their real estate was of the fair market value of $6,000; that their loss of business was to their damage of $20,000 per year; that they would suffer irreparable damage as a result. Appellees asked for a temporary and permanent injunction until they had been compensated for the loss of their rights to ingress and egress to U. S. 136; that the court proceed to appoint appraisers to assess appellees' damages accord-

ing to Section 11 of the Acts of 1905 (Acts 1905, Ch. 48, Page 59 [Burns' Ind. Stat., §3-1711, 1946 Replacement]).

Appellant, State of Indiana, filed written objections to the appointment of appraisers, generally alleging that there was no taking of appellees' real estate so as to entitle them to compensation; that the deprivation of access was suffered by the public in general; that other routes were available to admit access to U. S. 136; that appellees had no vested right of ingress and egress to a public highway not abutting appellees' real estate; that this was an inconvenience suffered not only by appellees but generally by the citizens of that area. At this time it was stipulated that certain Exhibits numbered 1 and 2 introduced in evidence by appellees at the prior hearing on appellees' application for temporary injunction be admitted and considered in evidence as appellants' Exhibits numbered 1 and 2 in the matter relative to the objections to the appointment of appraisers.

On September 9, 1959, the Vermillion Circuit Court overruled the objections and appointed appraisers. Subsequently, the appraisers filed their report assessing damages at $2,020. Exceptions to this award were taken by appellees and the State, and appellees filed an application for change of venue from the county. The cause was transferred to Vigo County Superior Court. The State, in its exceptions to the award, requested that a jury trial be held. On May 9, 1961, trial was commenced before a jury. On May 11, 1961, the jury returned a verdict in favor of appellees, assessing damages in the amount of $13,500. Judgment was rendered accordingly the next day by the Hon. Harold J. Bitzegaio. On motion to modify by the State, the court ordered the interest to be stricken from the judgment. A motion for new trial was filed by the State and

County of Vermillion which was overruled. This appeal followed.

The assignment of errors is in two rhetorical paragraphs. No. 1 states that the court erred in overruling the motion for new trial. No. 2 reads as follows:

"2. The court erred in overruling Appellant's, State of Indiana, objections to the appointment of appraisers."

No. 2 is an independent assignment of error and is in violation of Supreme Court Rule 2-6 which provides that the only means of asserting an error allegedly arising prior to the filing of a motion for new trial is to include it in the motion for new trial. *Edwards* v. *Wyllie* (1964), 246 Ind. 261, 203 N. E. 2d 200; *Fair Share Organ., Inc.* v. *Philip Nagdeman & Sons, Inc.* (1963), 135 Ind. App. 610, 193 N. E. 2d 257. No mention of this assignment of error is made in the motion for new trial, so it presents no question to this court.

Appellants state in their brief:

"It is appellants' *sole contention* that the trial court's overruling of appellant's, State of Indiana, objections to the appointment of appraisers was not sustained by sufficient evidence and was contrary to law." (Our emphasis.) Appellants' Brief, Vol. II, p. 256.

These are not proper grounds for a new trial. A "verdict" or "decision" can be alleged upon those grounds but not a ruling of the court. Burns' Ind. Stat., §2-2401, 1946 Replacement (Sixth); *Dugan* v. *Dugan* (1945), 115 Ind. App. 329, 58 N. E. 2d 936; *Clark* v. *Stephenson et al.* (1881), 73 Ind. 489.

Other procedural aspects set forth in the motion for new trial, particularly pertaining to the admission of

testimony concerning the amount of damages and the giving of instructions, are not argued in appellants' brief and are therefore waived. Supreme Court Rule 2-17 (e) and (f).

. We proceed on specifications 5 and 6 of the motion for new trial which state that the verdict of the jury to determine damages is not sustained by sufficient evidence and that the verdict of the jury to determine the amount of damages is contrary to law.

The principal question involved amounts to this: Did appellants' actions in closing Foster Road to the north of appellees' real estate under the existing circumstances constitute a taking of an interest in property which is compensable under our law? It is appellants' claim that appellees neither alleged nor proved sufficient facts which would constitute a taking as a matter of law; that appellees' land itself was not invaded or touched by the construction of Interstate 74; that rights of ingress and egress from the land to Foster Road were not impaired; that appellees may have been annoyed and inconvenienced by the building of the new highway, but this is not sufficient to constitute a "taking" of their property; that the creation of the cul-de-sac might have caused a greater inconvenience to appellees than to the general public, but that all of them suffered to some degree; that appellees did not suffer special injury entitling them to damages under the provisions of Art. 1, Sec. 21, of the Constitution of Indiana. Appellants' argument boils down to the doctrine of *damnum absque injuria*, which means that appellees may have suffered damage, but it was without *legal* injury. They claim no right was infringed. See *C. C. C. & St. L. Ry. Co. et al.* v. *Mumford et al.* (1935), 208 Ind. 655, 197 N. E. 828. There is also a contention that the necessity and public need for the

construction of a highway, such as Interstate 74, puts appellees in a similar but not equal position to that where the government exercises its police power, and no compensation is given.

Art. 1, Sec. 21, of the Constitution of Indiana, provides, in part, that no man's property shall be taken by law, without just compensation. The Acts of the Indiana General Assembly for 1905, Ch. 48, Page 59 (Burns' Ind. Stat., §3-1701 et seq., 1946 Replacement), provide procedures and remedies in connection with eminent domain and condemnation. Section 11 of that Act (Burns' 3-1711) provides as follows:

> "Any person having an interest in any land which has heretofore been or may hereafter be taken for any public use, without having first been appropriated under this or any prior law, may proceed to have his damages assessed under this act, substantially in the manner herein provided."

The question presented here is not whether appellants had the right to take, but whether or not an actual taking occurred. The appellees depended upon two exhibits, previously referred to herein as Exhibits 1 and 2. Respectively, they were the title sheet for the plans and profile of the Enumerated State Highway Project and a Strip Map of the same project. They had been introduced in evidence by appellees, *without objection*, at the hearing where they attempted to obtain a temporary restraining order. Later, when there was a hearing to determine the necessity of the appointment of appraisers, it was stipulated that these exhibits were introduced and admitted to be considered in evidence as *appellants'* Exhibits No. 1 and No. 2 in the matter relative to the appointment of appraisers. It is admitted by appellants that the appointment of appraisers was a question of fact for the

trial court to determine. *State Highway Commission* v. *Sandbrink* (1939), 215 Ind. 71, 18 N. E. 2d 382.

It is a general rule that a party is bound by the evidence he introduces, and it may even supply a defect in the adverse party's case. 13 West's Ind. Law Ency., Evidence, Ch. 12, §329, Page 199. Accordingly, these exhibits were sufficient as some evidence of appellees' interest in real property, its location, that Foster Road was made a dead end at Interstate 74 and that appellees were left in a cul-de-sac. We come now to the question of whether appellees' property fronting on Foster Road which was made a cul-de-sac by the dead end at Interstate 74 some distance north of appellees' property was a taking of appellees' property so as to be compensable in eminent domain.

The annotation appearing in 43 A. L. R. 2d 1079, §5, Footnote 10, while recognizing there is some authority that compensation is allowed in the earlier cases in the cul-de-sac situation, expresses doubt as to wisdom of such a rule under modern present-day conditions, stating:

> "The propriety of such an allowance in any case where only an indirect access is cut off, the landowner being left with other, although more circuitous, indirect ways of approaching the highway, *seems doubtful,* since obviously if the principle were extended to its logical limits almost every member of the public could claim compensation on the theory that the convenience of the highway was reduced by closing any means of access. . . ." (Our emphasis.)

Two of the most recent cases on the subject are *Warren* v. *Iowa State Highway Comm.* (1959), 250 Iowa 473, 93 N. W. 2d 60, and *Fougeron* v. *County of Seward* (1963), 174 Neb. 753, 119 N. W. 2d 298.

Both the Iowa and Nebraska cases involved factual situations similar to the case at bar as they concerned

farm real estate each of which was located some distance away from the cul-de-sac.

The discussion in the Iowa case, *supra,* is as follows (at pages 485, 486 of 250 Iowa, at pages 67, 68 of 93 N. W. 2d):

"The principle evolving from the foregoing authorities is that one whose property abuts upon a roadway, a part of which is closed or vacated, has no special damage if his lands do not abut upon the closed or vacated portion so that his right of ingress and egress is not affected. If he has the same access to the general highway system as before, his injury is the same in kind as that suffered by the general public and is not compensable. It is damnum absque injuria. In the case before us, the plaintiff's right of access to the secondary road is not affected. She has the same means of ingress and egress as she had prior to the closing. The traveling public generally who have occasion to use the secondary road will find it much less convenient on many occasions. Some persons living along the roadway, or those who may wish to visit their lands lying along it, will be compelled to travel additional miles. Some will be shut off from their formerly direct route to the nearest city or town. They will be considerably inconvenienced in visiting these places for shopping purposes, or in taking their livestock or grain to market. Persons in the city or town desiring to visit farms along the road for business or social purposes must go farther and on other roads to reach their destinations which may lie on the other side of U.S. Highway No. 35. But they have no recourse in damages.

"This is a common injury, inevitable in the building of highways, or in handling the traffic upon them. Many owners of motels, or gasoline stations, or other business establishments find themselves left in a by-water of commerce when the route of a highway is changed so that the main flow of traffic is diverted. A merchant or other businessman is cut off from prospective customers going in one direction when a street in front of his establishment is converted into a one-way throughfare. A divided highway, or one with

'jiggle' bars or other obstructions in the center to prevent traffic crossing, has the same effect. But this gives the businessman no claim for damages against the authority which has installed the traffic regulators which injure him. Iowa State Highway Commission v. Smith, supra; Wilson v. Iowa State Highway Commission, 249 Iowa 994, 1004-1006, 90 N.W. 2d 161, 168.

"It is apparent that the plaintiff here will suffer considerable inconvenience in being shut off from her previous direct access to her lands lying west of the point of closing the secondary road at its intersection with Highway No. 35. Her home property on the east of the intersection will lie in a cul-de-sac, and her travel can be only to the east instead of both east and west. Nevertheless her means of access to the general highway system is not impaired; that is to say, she has the same means of ingress and egress to and from her lands as before. Her damage is greater in degree than that suffered by the general public; but it is not different in kind, which is the ultimate test. . . ."

The *Nebraska* case, *supra*, follows the *Iowa* case and holds the non-abutting owner is not entitled to compensation. The *Nebraska* opinion states (at pages 759, 760 of 174 Neb., at pages 303, 304 of 119 N. W. 2d):

"Was the closing of the county road, under the circumstances shown, a taking or damaging of plaintiffs' property that would entitle them to compensatory damages? The evidence shows that neither of plaintiffs' tracts of land abuts the intersection at which the county road is being barricaded. Plaintiffs' home place in Section 23 is more than one-quarter mile east of the county road barricade. It is obvious that the barricade will prevent the use of the county road as plaintiffs have used it in the past. It will be necessary for the plaintiffs to use a more lengthy and circuitous route to move vehicles, farm machinery, and livestock from one tract to the other. Their immediate access to the country road is not impeded, but they assert that the right of ingress and egress to their two tracts of land has been unlawfully interfered with and that they are entitled to have

the barricading of the road enjoined until due process is afforded and steps taken to have the damages determined and paid.

"This court has determined that a property owner suffers a compensable damage on account of the construction or vacation of a public road when egress and ingress to his property are cut off or interfered with *and he has no other reasonable means of access.* The right of access under such circumstances is property which cannot be taken from him without compensation. But plaintiffs' access to the county road was in no way impeded. It was barricaded some distance from plaintiffs' property. They can still reach their lands by the public road system, although the distance will be greater and the route circuitous. The inconvenience sustained is the same as that sustained by the general public, although it may be greater in degree. One cannot enjoin the barricading of a public road where he suffers only such inconvenience or injury as is suffered by the public generally, even though his inconvenience may be greater in degree. It follows also that plaintiffs have no cause for action for damages where they have not been specially damaged. . . ." (Our emphasis.)

We believe the modern rule enunciated in these cases should be adopted as the law of this state. Accordingly, *Oler* v. *Pittsburgh, etc., R. Co.* (1916), 184 Ind. 431, 111 N. E. 619, and earlier decisions of this state in so far as they hold to the contrary are disapproved.

From the evidence favorable to appellees, however, and consistent with the above rule, it should be pointed out that appellees did not have a reasonable outlet or means of access left on Foster Road for the steel fabricating plant there operated by them, particularly in view of the insufficient bridge on Foster Road which appellees would be hereafter compelled to use and which had a load limit of 3000 pounds although the trucks supplying appellees sometimes carried loads of fifty tons of steel. In view of the insufficient alternate route which was the only remaining

outlet available to appellees, we must conclude this injury to appellees' steel fabricating plant was far greater and of a kind and nature different from the injury suffered by the general public and therefore comes within the exception to *damnum absque injuria* so as to be compensable. In fact, under these exceptional circumstances, the closing of the highway had the effect of depriving appellees of any suitable access to their steel fabricating business.

We find that the decision was not contrary to law and that there was sufficient evidence from which the court could have found that the acts of appellants constituted a denial of appellees' right of access to their property and was a taking of property rights which was compensable in the amount assessed as damages by the jury.

Judgment affirmed.

Arterburn, C. J., and Achor and Landis, JJ., concur.

Jackson, J., concurs in result with opinion.

### CONCURRING OPINION

JACKSON, J.—I concur in the result of the majority opinion, but am of the opinion that recovery of damages should be limited to a case of extreme hardship. I think it can be said that any person in business might suffer injury "far greater and of a different kind and nature from the injury suffered by the general public." Certainly, as a class, in view of the precedent heretofore established, persons suffering such injury are not to be compensated.

In the case at bar, the peculiar circumstances as well as the nature of appellees' business which necessitated the hauling of extremely heavy loads over what is obviously an inadequate bridge and highway might be

considered to be the exception to the rule of *damnum absque injuria.*

NOTE.—Reported in 205 N. E. 2d 672.