PAPP *v.* CITY OF HAMMOND.

[No. 31,132.  Filed October 19, 1967.]

*Owen W. Crumpacker, Harold Abrahamson, Crumpacker & Abrahamson,* of Hammond, for appellant.

*Eugene D. Tyler,* of Hammond, for appellee.

MOTE, J.—The appeal herein results from the commencement by Appellant of an action below on April 3, 1964, against the Appellee, City of Hammond, a municipal corporation. Omitting the caption and formal parts, the complaint reads as follows:

"Comes now plaintiff and for cause of action alleges and says:

(1)   Plaintiff is, and for many years last past, has been the owner and operator of a business, commonly known as a filling station, located at 1261 Summer Street, Hammond, Indiana.

(2)   In November of 1962, in connection with a project commonly known as the Columbia Avenue Overpass, the City of Hammond caused State Street and Summer Street in Hammond to be widened and resurfaced. As part and parcel of the project, different portions of State Street and Summer Street, on which Streets plaintiff's station abuts, were either closed or rendered impassable by vehicular traffic for approximately one (1) year.

(3)   During this period of time, by reason of plaintiff's filling station being inaccessible from the streets, plaintiff suffered substantial losses in business, and the resulting profits therefrom, resulting in a loss of net profit during the year involved of Six Thousand ($6,000.00) Dollars.

(4)   That plaintiff has made demand upon the city for compensation for his losses suffered, as hereinabove described, but that he has received no compensation.

WHEREFORE, Plaintiff prays judgment of and from the defendant in the principal sum of Six Thousand ($6,000.00)

Dollars for his costs herein, and for all further just and proper relief in the premises."

On February 1, 1965, Appellee filed its Motion to Make More Specific, which later was dismissed and which will be mentioned hereafter only indirectly.

Thereafter, on October 15, 1965, Appellee filed Interrogatories and Request for Admission of Fact, at the same time dismissing its said Motion to Make More Specific.

In order to provide certainty, we deem it not inappropriate to set forth Appellee's Interrogatories and the answers thereto, as well as the admission of facts, as follows:

"1. Does the plaintiff admit that on August 21, 1962, the defendant adopted Declaratory Resolution 2204, attached hereto and made a part hereof as Exhibit 'A,' by the Board of Public Works and Safety.

Answer: Yes.

2. That plaintiff admits that notice of adoption of resolution accessing (sic) damages for property adjacent to Columbia Avenue Overpass was duly published, a copy of which Notice is attached hereto as Exhibit 'B', of a hearing on September 10, 1962, to hear remonstrances from any person affected by such improvement.

Answer: Yes.

3. That the plaintiff admits that he did not appear or file any written or oral remonstrance at said hearing of September 10, 1962.

Answer: Yes.

4. That plaintiff admits that the only written notice of the claim was the attached Exhibit 'C', a letter written to Eugene D. Tyler, Special Counsel for the Columbia Avenue Overpass on April 30, 1963, and subsequent correspondence and telephone calls between said attorneys.

Answer: Plaintiff does not admit that the only written notice of the Claim was attached as Exhibit 'C', but admits that said Exhibit 'C' was written by his attorney on April 30th, 1963, which was the first written notice, but states that as he is informed and verily believes

there were not only subsequent telephone calls between said attorneys but there were also previous telephone calls.

5. Describe precisely the nature of the street obstructions; whether or not they prohibited any vehicular access to plaintiff's premises and together with dates of the total obstruction and if partial obstruction, describe the nature and extent of said partial obstruction of access and the dates thereof.

   Answer: State Street and Summer Street were in various stages of impassability during the period of November 1, 1962, through and including November 1, 1963, the exact dates and nature of the obstructions are within the knowledge of the defendant, its engineer and contractor while the exact information is not available to plaintiff.

6. Was Plaintiff able to enter the premises with his own vehicle and were other vehicles able to enter the premises? Was said service station under lease from another party and if so, when was said lease terminated?

   Answer: Plaintiff and other vehicles were able to enter the premises only during intermittent periods of time and under hazardous conditions. Said station was under lease. Said lease terminated on February 29, 1964, and was not renewed.

7. Plaintiff is requested to set forth below an itemized statement of loss together with method of computation.

   Anwer: All pertinent books and records of plaintiff were turned over to special counsel for the City of Hammond on or about August 7, 1963, for inspection and analysis and retained to and including December 5th, 1963, and for this reason plaintiff does not deem it necessary or appropriate to provide computations and explanatory information in answer to these interrogatories."

Subsequently on December 28, 1966, on Appellee's Motion for Summary Judgment which asserted that "on the basis of the Plaintiff's (Appellant's) answers to interrogatories and

requests for admissions of fact . . . together with the Complaint . . . Plaintiff (Appellant) does not have a cause of action", the trial court rendered its finding, decision and judgment, which, omitting the formal parts thereof, is as follows:

> "Cause having heretofore been submitted to Court on Defendant's Motion for Summary Judgment and Plaintiff's answers to Defendant's Interrogatories and admissions of fact and taken under advisement and set for judgment on this day and the Court being duly advised in the premises sustains said Defendant's Motion for Summary Judgment and the Court now finds for the Defendant.
>
> IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED BY THE COURT that Defendant's Motion for Summary Judgment and Plaintiff's Answers to Defendant's Interrogatories and Admissions of facts and taken under advisement, the Court being duly advised in the premises sustains said Defendant's Motion for Summary Judgment and the Court now finds for the defendant."

It appears to be incumbent upon us first to dispose of a prevailing question concerning the summary judgment entered by the trial court under the provisions of the Act of 1965, ch. 90, p. 126, Burns' 1966 Special Supp. § 2-2524, to which reference is hereby made, with particular emphasis on paragraphs (c), (d) and (e). In the interest of brevity, we have elected not to quote the language of the Act. It will be observed that a trial court may make piecemeal or total findings and judgments, depending upon the state of the record. We are required to state, however, that similar to directing a jury verdict on proper motion, there can be no open-end to the evidence or facts before the court, or inferences to be drawn therefrom, and furthermore, without negation by the plaintiff in sworn answers to interrogatories and admission of facts, the facts alleged in the complaint must be taken as true.

Appellant cites the case of *Mitchell* v. *Pilgrim Holiness Church Corp.* (C.A. 7, 1954), 210 F. 2d 879, cert. den. 347

U.S. 1013, 74 S. Ct. 867, 98 L. Ed. 1136. The Circuit Court of Appeals for the Seventh Circuit, in an opinion by Judge Swaim, speaking of a summary judgment by the defendant, said at page 881:

> "In considering the propriety of the entry of this summary judgment on the motion of the defendant we must remember that all facts properly pleaded by the plaintiff must be accepted as true, Purity Cheese Co. v. Frank Ryser Co., 7 Cir., 153 F. 2d 88; and that the facts disclosed by the affidavits and counter- affidavits must be considered in the light most favorable to the plaintiff, Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F. 2d 881, 884; and that, 'A summary judgment upon motion therefor by a defendant * * * should never be entered except where the defendant is entitled to its allowance beyond all doubt.' Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 189 F. 2d 213, 216."

Appellant then goes on to say:

> "The transcript herein contains the briefs of the parties because they were caused to be filed by the trial court. The matters set forth in defendant's memorandum or brief, insofar as they contain factual representations were not properly before the trial court to be considered in deciding the question or questions presented by the motion for summary judgment. See Barron & Holzhoff, Federal Practice and Procedure, Volume 3, Section 1236, page 161.

> Therefore, the trial court concluded, and we believe erroneously, that under no circumstances could plaintiff-appellant recover compensation because of temporary (one year) loss of access to the premises on which he operated his business which, by its nature, required the entry and exit of motor vehicles."

Obviously, Appellant assumes the position that the answers to the interrogatories, he calls them "factual representations," were not properly before the trial court and thus could not be considered in the rendition of the finding and judgment of a summary nature under the 1965 Act, citing Barron & Holzhoff, Federal Practice and Procedure, Vol. 3, § 1236, p. 161.

It is true that the so-called Indiana Summary Judgment Act, supra, was enacted in 1965; that it may be somewhat likened to Rule 56 of the Federal Rules of Civil Procedure; and that Federal authorities provide fertile soil for interpretation and application. However, we are unable to contemplate how Appellant's esoteric interpretation of and application to the case at bar would in anywise serve the apparent purpose for its enactment.

Without attempt to compare or to contrast the Indiana Act with Federal Rule 56, or to analogize the expressed views of the text writers relative to the latter, we reach the conclusion that our General Assembly made provisions in our own Act to encompass what is indicated by the record herein. If facts admitted under oath by a party to the litigation are not to be considered by the trial court in rendering judgment of a summary nature, we can discover no purpose for this type of discovery. We adhere to certain language of paragraph (c) of the Act (§ 2-2524) referred to above and now emphasized:

". . . The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and *admissions on file,* together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." (Emphasis supplied.)

It follows from what we have said, we think, that we do not give approval nor do we adopt for our own jurisdiction the connotation apparently ascribed by Appellant to the language in Mitchell v. Pilgrim Holiness Church Corp., supra, to-wit:

"In considering the propriety of the entry of this summary judgment on the motion of the defendant we must remember that all facts properly pleaded by the plaintiff must be accepted as true, . . ."

and we see no reason for refusing the remainder of the quotation. As a matter of logic, approximately the same rules

set forth therein are applicable in Indiana to the ruling on a demurrer.

In the recent case of *Jose* v. *Indiana National Bank of Indianapolis* (1966), 139 Ind. App. 272, 218, N. E. 2d 165, Judge Bierly, for the Appellate Court of Indiana, said:

> "The practical effect of a judgment by way of a motion to dismiss, and by a motion for a summary judgment are the same. They both result in a final determination of the controversy at the trial level, and if the party who is adversely affected at that level wishes to pursue the matter, he has the right to appeal. . . . On the other hand, we realize the necessity for such determinations by the trial court to expedite cases which present no triable issue of fact; thus, giving some relief to their over-crowded dockets."

Here, Appellant is afforded whatever relief to which he may be entitled by this appeal. Having established what we consider to be the basic rules for summary judgment, we next address ourselves to the validity of the judgment rendered. In doing so, we want it clearly to be understood that we deem it thoroughly proper to consider the allegations of the complaint, set forth above, assuming to be true all facts not negated by Appellant's own admission of fact, also set forth above.

On pages 32 and 33 of his brief, Appellant rather succinctly sets forth his contentions as to the invalidity of the judgment from which he appeals, as follows:

> "The defendant's motion for summary judgment and memorandum in support thereof is based on three grounds, none of which furnish a basis for granting defendant's motion.
>
> The first ground is bassed on the notice statute, Burns 48-8001, applicable to tort actions. Plaintiffs' complaint herein does not seek recovery against the City on the basis of any tort and therefore the statute is inapplicable.
>
> Defendant's second point is that plaintiffs are barred from pursuing their claims on the basis of any other theory by their failure to exhaust their remedy under Burns 48-3507 which statute is set out in defendant's memorandum.

It is respectfully submitted that plaintiffs are not barred by reason of said statute for the reason that plaintiffs' property and property rights were not affected by reason of any elevation or depression of tracks or change of grade in the street. As stated, no changes were made in the grade of either State Street or Summer Street. For this reason, the grade separation statute, 48-3507, does not create a bar to plaintiffs' complaint.

Defendant's third point is that plaintiffs cannot recover, as a matter of law, because traffic is diverted from their premises and that a property owner is not entitled to damages due to inconvenience suffered such as that suffered by the community or public generally, where streets are being repaired, highways constructed, or widened. In support of this proposition, defendant cites several Indiana authorities, none of which support defendant's position.

By reason of the nature of their businesses, loss of access to plaintiffs' premises by motor vehicle constituted total loss of access.

For long periods of time the streets upon which plaintiffs' premises abutted were completely closed to vehicular traffic and there was simply no other way to reach their businesses. This is not the same as a matter of inconvenience necessitated by taking a more circuitous route, suffered by the public generally."

In the final analysis, we have before us, therefore, only an alleged cause of action for so-called "inverse condemnation" according to the provisions of our Eminent Domain Act of 1905, ch. 48, p. 59, as amended, and particularly § 1 thereof, Burns' § 3-1711, which reads as follows:

"Any person having an interest in any land which has heretofore been or may hereafter be taken for any public use without having first been appropriated under this or any prior law may proceed to have his damages assessed under this act, substantially in the manner herein provided."

No change has been effected in this section since its original enactment. It appears, until a few years ago, that there had to be a "taking" of land and then our courts began to consider the so-called "taking of an interest in land," or "taking of a right to enjoyment," or "taking an interest in a

right." So much confusion now seems to exist with respect to "inverse condemnation" that parties to litigation, and particularly the parties to the present appeal, cite the same authorities in support of their diametrically opposite claims and assertions.

The following Indiana cases are cited in this appeal: *State* v. *Ensley* (1960), 240 Ind. 472, 164 N. E. 2d 342; *State* v. *Geiger & Peters, Inc.* (1964), 245 Ind. 143, 196 N. E. 2d 740; *Elson* v. *City of Indianapolis* (1965) 246 Ind. 337, 204 N. E. 2d 857; *State* v. *Tolliver* (1965) 246 Ind. 319, 205 N. E. 2d 672, 5 Ind. Dec. 193; *State* v. *Hastings* (1965) 246 Ind. 475, 206 N. E. 2d 874; and *State* v. *Jordan* (1966) 247 Ind. 361, 215 N. E. 2d 32.

Before we embark upon a discussion of the relevant applicable law, perhaps it would be well to attempt a determination of the significant recorded facts before the trial judge at the time of the rendition of summary judgment. The facts alleged in the complaint and the answers to interrogatories, the latter modifying the former where there are inconsistencies, if any, appear to furnish the limits of judicial consideration. In view of the turn of the litigation and the record concessions of Appellant, we cannot perceive how the construction of the Columbia Avenue Overpass affects in any manner the question on appeal and we have concluded that all references thereto amount to surplussage in relation to Appellant's assertion of sustained damages regarding "inverse condemnation."

We note also that Appellant sought to recover only alleged damages for substantial losses in business and the resulting net profits of $6,000.00 during the fiscal year of November 1962 to 1963, as alleged in the complaint. In the answers to interrogatories and admission of facts, Appellant may be credited with having established that State and Summer Streets (at the intersection of which was located his business and which was some distance from the Columbia Avenue Overpass referred to above) were in various stages of im-

passability during the period of November 1, 1962, through and including November 1, 1963, the exact dates and nature of the obstructions being within the knowledge of the defendant, its engineer and contractor, while the exact information was not available to plaintiff (Appellant).

Our research and investigation inclines us to the view that there are fatal defects in Appellant's posture and claim. First, he sought by his complaint to recover for loss of business which resulted in loss of net profits; second, no "taking" of land was involved; and third, we are constrained to the belief that if Appellant had a cause of action, it necessarily would be required to be b a s e d upon negligence, if any, of the referred to contractor in not prosecuting and concluding the particular project with dispatch.

That Appellant had the right of reasonable means of ingress and egress to his property is not to be doubted, but this does not imply that the City has not only the power but the duty as well to maintain, widen, repair and redesign its streets and thoroughfares. Neither party to this appeal has researched this proposition and we do not believe it to be our duty so to do. Let it be said that the long history of the development of natural, public and private trade routes is one of the most interesting and complicated in the growth of our nation, the states and local divisions of government. "Potomac Landings," written by Paul Wilstach (published in 1921 by Toronto Doubleday, Page and Company), indicates the difficulties encountered in our early trade upon and along the historic Potomac River. It is said that the establishment of our Union resulted from the incessant quarrels emanating from its use and enjoyment by our early colonists. Be that as it may, the development of public highways and streets, and their maintenance and alterations thus better to cope with the ever-increasing traffic problems for an ever-growing population, has taxed human ingenuity in planning and financing to the fullest extent. Not a single observer, we think, can say that he has not been inconvenienced as well as suffered

financial loss, though small, in the construction, repair and maintenance of public thoroughfares and bridges, as well as other public projects. It becomes inexorably a part of one's existence. But what, one may ask, of the business man, as here, who sustained a net financial loss? He too, it seems, generally must suffer. Who knows how many business men have profited greatly by moving ahead of the tide and located their businesses at intersections of thoroughfares or along their routes upon anticipation of changing traffic patterns? Location experts are used today quite extensively. Business and industry do not wait until "it happens." Whether the site upon which Appellant conducted his business would have permitted a rapid recoupment of his losses is unknown, but the occurrence here seems to be one of the prices of doing business.

Now as to the authorities on the particular proposition of "inverse condemnation," we believe we have found no factual analogy to the case at bar in which Appellant asserts "various stages of impassability" to and from his property over a period of about one year, during which time "plaintiff and other vehicles were able to enter the premises only during intermittent periods of time and under hazardous conditions."

State v. Ensley, *supra,* exhaustively treats a factual matter rather different than here—the installation of a divider strip on Keystone Avenue in Indianapolis, thus depriving ready and direct access of northbound traffic to a filling station located at the intersection of 62nd Street and Keystone Avenue. The State, among other contentions, asserted its right to such installation to control traffic in such manner under its police power. Citing several authorities, including the Eminent Domain Act of 1905, as amended, it quoted the following:

> " 'Under the Act every element of damage which will ordinarily and naturally result from the *taking of property* may be considered.' (Citations)" (Emphasis supplied.)

This Court went on to say:

> "It is well-settled that acts done in the proper exercise of governmental powers not directly encroaching on private property, although their consequences may impair its use or value, do not constitute a 'taking' within the purview of the constitutional provision prohibiting taking of private property for public use without just compensation. Any injury so caused is deemed to be remote and inconsequential, and thus not compensable in the absence of an express statute to the contrary (citations)."

The opinion in State v. Ensley, *supra,* is replete with significant language which, together with the authorities from other jurisdictions both cited and quoted with the approval of this Court, denoted lack of liability in the case at bar. Perhaps the further language therein will suffice to support our remarks:

> "Nor is an abutting property owner entitled to damages merely for 'a partial limitation and obstruction' of the right of access. Such right must be *substantially or materially interfered with or taken away.* See authorities cited above on the subject of an easement of ingress and egress."

State v. Geiger & Peters, Inc., *supra,* decided in 1964, concerned "inverse condemnation" as in the case now before us. The action was predicated upon loss of ingress and egress allegedly under the Eminent Domain Act of 1905 (§ 3-1711) and the Limited Access Statute of 1945 (§ 36-3105). The construction of the new Madison Avenue Expressway in the City of Indianapolis cut off ingress and egress on the west side of the owners' property, leaving to them a long and circuitous route to distant project interchanges or a new dead-end narrow service to the west side of the property, which was inadequate for transporting over it the steel beams and trusses 90 feet in length and fabricated on said property.

A careful study of the language of the opinion in the case next above referred to indicates that the Limited Access Statute provides for any deficiency in the Eminent Domain Act to require the payment of damages by the State where an

interest in land is in existence which is or has been taken for public use. We note one difference between that case and the one now under consideration, namely: permanent taking or deprivation of access therein, as contrasted with "various stages of impassability" for about one year during which time, Appellant "and other vehicles were able to enter the premises only during intermittent periods of time and under hazardous conditions."

State. v. Tolliver, *supra,* also concerned recovery of damages for the alleged taking of land without condemnation. The owners of the land, upon which was situated a steel fabricating plant, had raw steel and iron sometimes delivered by truck to said plant in loads of 50 tons. Fabrication of ornamental products for the decoration of buildings and their interiors took place in the plant and were sold and distributed therefrom. The outlet for this traffic was north over and along Foster Road in Vermillion County to U.S. Highway 136. In order to permit a limited access highway known as Interstate 74 to be constructed in an east-west direction approximately parallel to U.S. 136, a barrier was placed on Foster Road where it ran into Interstate 74, so that no one could proceed northward across it. This left the owners and plant operators with the only means of entrance to and exit from the property to the south on Foster Road, which required crossing a bridge that was in "bad shape" and had a load limitation of 3,000 pounds. It will be observed that the real estate in question and upon which the plant was located did not abut the new Interstate Highway. In order to continue their business, the owners purchased land north of U.S. 136, constructed a new factory thereon and abandoned the old plant for business purposes. Inasmuch as the State took no action to condemn and pay damages, the owners instituted an action to recover their alleged loss.

Adopting the modern rule enunciated in the cases cited, this Court permitted recovery of damages based upon the

rather compelling facts that there remained no reasonable outlet or means of access on Foster Road where the steel fabricating plant had been operated, particularly in view of the insufficient bridge with a load limit of 3,000 pounds and on the ground that the injury to the owners was greater than to the general public; hence it was held that the facts presented an exception to *damnum absque injuria* so as to be compensable.

State v. Jordan, *supra*, presents another phase of the problem now confronting us. This case, predicated upon "inverse condemnation" also, although *State* v. *Stabb* (1948) 226 Ind. 319, 79 N. E. 2d 392, appeared to recognize the principle that loss of profits in a business is compensable in an eminent domain proceeding, and overruled certain prior cases cited in that opinion, Judge Arterburn, speaking for this Court, said:

". . . the *Stabb* Case [226 Ind. 319, 79 N. E. 2d 392] has been criticized and distinguished to such an extent that we feel that it no longer has any legal significance (citing Elson v. City of Indianapolis, supra, [246 Ind. 337, 204 N. E. 2d 857] and State v. Ensley, supra) 240 Ind. 472, 164 N. E. 2d 342."

Judge Arterburn further remarked:

"A 'taking' in an eminent domain proceeding has been defined as taking any actual physical part of the real estate, as well as any important rights attached thereto. Certainly the blocking of egress from the property would be a compensable injury to the owner or lessor. However, a landowner is not entitled to damages for inconvenience suffered, such as that suffered by the community or public generally, where streets are being repaired, highways constructed or widened. *A property owner who loses no real estate is normally not entitled to damages.*" (Emphasis supplied.)

On the question of loss of business profits Elson v. City of Indianapolis, *supra,* appears to be to the same effect; however, the facts presented therein are of a somewhat different nature, and they involved area redevelopment.

State v. Hastings, *supra,* was an "inverse condemnation" action. Judge Jackson, speaking for the majority of this Court, said:

> "We are inclined to the belief, and here so hold, that the greater weight of authority does not permit the inclusion of profits from a business to be used as a determinant in arriving at the value of real estate, or access, in a condemnation proceeding. (Elson v. City of Indianapolis, supra, cited)"

In our consideration of the facts before us and in the application of the statutory law thereto, we have not failed to take into account the provisions of § 6 of the Eminent Domain Acts of 1905 (Burns' § 3-1706). See State v. Ensley, *supra.*

The Limited Access Statute of 1945 (Burns' § 36-3105) has provided for the establishment and payment of new and additional damages to property owners and lessees, but we observe no application of that statute to the facts in the case at bar. We may say, however, that the necessity for its enactment to protect the rights of private property owners, without including therein or otherwise directly providing for damages to be paid to owners and lessees on account of temporary inconvenience and losses during the repair, reconstruction or widening of thoroughfares, may permit the indulgence that such is not intended.

We are lead to the conclusion that the complaint, on the theory finally proscribed and admitted, probably did not state a cause of action inasmuch as it sought damages for a temporary loss of business profit where there was no "taking" of real estate or any other right thereto attached, or for that matter, any property right when measured by the general public interest in the maintenance, widening and repair of streets of the municipality, which has the statutory control over the same and which has the bounden duty so to maintain and repair them to prevent harm and injury to the users thereof.

Furthermore, we observe no demonstration of error by the trial court in its finding and summary judgment, having in mind the modification of the well-pleaded facts in the complaint, by the verified answers to the interrogatories propounded and admission of facts. Also, it is a long-established rule that business losses are not to be calculated and form the basis of damages in a condemnation proceeding. If this Court were to sanction claims for damages where temporary business losses are or may be sustained in matters of the character here presented, without direct legislative direction, the general public and necessary public improvement programs would suffer very serious and almost immeasurable adverse consequences.

Judgment affirmed.

Hunter, C. J., Lewis and Arterburn, JJ., concur.

Jackson, J. concurs in result.

NOTE.—Reported in 230 N. E. 2d p. 326.