

I N T H E

# Indiana Supreme Court

Supreme Court Case No. 24S-PL-118



FILED

Oct 31 2024, 2:28 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

## State of Indiana,
*Appellant*

–v–

## Franciscan Alliance, Inc. f/k/a Sisters of St. Francis Health Services, Inc.; The Market Place at State Road 37, LLC; SCP 2010-C36-018, LLC; et al.,
*Appellees*

---

Argued: June 19, 2024 | Decided: October 31, 2024

Appeal from the Johnson Superior Court
The Honorable Marla K. Clark, Judge
No. 41D04-1911-PL-181

On Petition to Transfer from the Indiana Court of Appeals
No. 22A-PL-2969

---

**Opinion by Chief Justice Rush**

Justices Massa, Slaughter, Goff, and Molter concur.

**Rush, Chief Justice.**

Indiana proudly serves as the "Crossroads of America" for residents and the millions of travelers who traverse our roads each year. To maintain and improve these roads, the State must at times take private land and provide the owner with just compensation. But such improvement projects can also reconfigure existing roads, affecting access to Hoosier landowners' properties. And when this happens, the reconfiguration may implicate the constitutional and statutory rights of those landowners.

Here, a highway-construction project required the widening of a roadway and the closure of an intersection. To facilitate this work, the State brought an eminent domain action to acquire a narrow strip of land from an undeveloped parcel. The owner of that parcel, along with the owner of easement rights over the strip of land, contested the action and sought damages based on changes in traffic flow resulting from the intersection closure. A jury found for the owners and awarded them collectively over $2 million in damages. The State appealed, citing decades of precedent preventing a property owner from receiving compensation for changes in traffic flow when the property's points of ingress and egress remain unchanged.

Today, we reaffirm our long-established rule that when a road-improvement project leaves a property's access points unchanged, a landowner cannot recover damages from changes in traffic flow between their property and a public road, as those damages do not result from the taking of a property right. And we hold that here, because the State's construction project did not affect the owners' access points to their properties, damages from the intersection closure were not compensable as a matter of law. Accordingly, we reverse and remand.

## Facts and Procedural History

This dispute is driven by the long-running I-69 project along State Road 37 in Johnson County. The State planned to build the I-69 corridor on top of State Road 37, but that road was too narrow to accommodate the

project. So the State needed to acquire a small strip of property that ran parallel to State Road 37 to both widen the road and provide related infrastructure. The State also needed to close a nearby intersection within its right-of-way at State Road 37 and Fairview Road, converting the latter into a dead-end street.

Part of the strip of land the State needed—0.632 acres—was located on a nearly fifty-acre parcel of undeveloped land owned by Franciscan Alliance, Inc. At the time, Franciscan's parcel was bordered by State Road 37 to the west, Bluff Road to the east, and a parcel owned by The Market Place at State Road 37, LLC to the south. Southwest of the Market Place property was a parcel owned by SCP 2010-C36-018, LLC, which contained a CVS pharmacy. Market Place had drainage and other easements that ran through part of Franciscan's parcel, and SCP had perpetual easement rights to the drainage system that ran through Market Place's parcel and part of Franciscan's parcel.

The map below (adapted from the record) shows the parcels, their owners, the adjacent roads, and—in red—the 0.632-acre strip of land that the State needed to acquire from Franciscan.



In 2019, after the State was unsuccessful in buying the 0.632-acre strip, the State filed an eminent domain action. The complaint named several parties as defendants, including Franciscan—as owner of the strip of land—and Market Place and SCP—as holders of easements over the strip.[1] The trial court issued an order appropriating the 0.632 acres and appointing appraisers to determine the amount of compensation owed to each defendant. The appraisers concluded that Franciscan was owed $1,986,000: $47,400 for the fair market value of the land taken and $1,938,600 for damages to the retained land. As for SCP, the appraisers concluded it was not entitled to any compensation. Both the State and SCP disagreed with the report and demanded a jury trial.

Over the next two years, the parties obtained their own appraisals of the value of both the strip of land and any related drainage easements. The State's appraiser valued the 0.632 acres at $40,500, noting that while the intersection closure at Fairview Road would render access to Franciscan's land "more circuitous," any damages—measured by the "diminution in value . . . as a result of the change"—would not be "compensable." The State's appraiser also concluded that any "gain or loss in value" as a result of losing the drainage easement through Franciscan's property would be "offset" by taking Franciscan's equivalent easement over Market Place's property.

Franciscan's two appraisals valued the 0.632 acres at $50,560 and $63,200 respectively. The first appraiser also assessed $2,657,440 in damages to Franciscan's retained land based on his conclusion that the closure of the Fairview Road intersection would "eliminate the feasibility of a commercial use." The second appraiser similarly assessed $3,150,000 in damages of this nature, concluding that the intersection closure changed the property's "highest and best use" from commercial to residential.

---

[1] The State also initiated condemnation proceedings against Market Place to take a narrow strip of its property in a separate suit. *State v. Mkt. Place at State Rd. 37, LLC*, No. 22A-PL-2765 (Ind. Ct. App. May 17, 2023) (mem.), *trans. denied*.

SCP's appraiser found that SCP, as a drainage-easement holder, would likely incur a portion of the costs needed to repair any damage to the drainage system. But the appraiser assessed no damages owed to SCP for the taking of its drainage-easement rights. The appraiser did, however, assess $4,400,000 in other damages owed to SCP. In reaching this amount, the appraiser found that the "highest and best use" of SCP's property would be "downgraded" due to traffic being "routed away from the subject property" following the intersection closure.

After these reports were submitted, the State moved to exclude Franciscan's and SCP's appraisals along with any other evidence of damages resulting from increased "circuity of travel" due to the intersection closure. The trial court denied these motions. Subsequently, the court approved an agreement between the State and Market Place in which the State paid $250,000 in damages resulting from the taking of Market Place's easements that ran through the 0.632 acres of Franciscan's property.

Then, in June 2022, a three-day jury trial began, where the State, Franciscan, and SCP presented testimony from their appraisers as to the value of the 0.632-acre strip and other damages. Throughout trial, the State continued objecting to Franciscan's and SCP's evidence of damages from the intersection closure, which the court overruled. As for SCP's drainage easement, SCP's expert witness testified that any damages to the easement from the State's condemnation of Franciscan's land "would be accounted for" by the $250,000 settlement between the State and Market Place. He explained that "from a cost standpoint," there was "no more drainage issue" following the settlement. At the conclusion of trial, the jury returned a verdict awarding $680,000 plus interest to Franciscan and $1,500,000 plus interest to SCP. The trial court entered judgment, ordered interest to accrue until the judgment was paid, and ordered the State to pay Franciscan's and SCP's attorneys' fees. The State filed a motion to correct error that was denied.

The State then appealed, claiming the trial court erred in admitting evidence of damages stemming from the intersection closure, allowing post-judgment interest, and awarding attorneys' fees to both parties. Our

Court of Appeals reversed, concluding that this case fit cleanly "within the ambit of our existing caselaw on circuity of travel and traffic flow," and thus holding that the roughly $2.2 million judgment was "erroneous." *State v. Franciscan All., Inc.*, 223 N.E.3d 1148, 1153 (Ind. Ct. App. 2023). The panel reversed SCP's judgment entirely and remanded the case for the trial court to recalculate damages and prejudgment interest for Franciscan. *Id.* at 1154.

Franciscan and SCP both petitioned for transfer, which we granted, vacating the Court of Appeals' opinion. Ind. Appellate Rule 58(A).[2]

## Standard of Review

The core of the dispute turns on whether the damages awarded to Franciscan and SCP based on the closure of Fairview Road's intersection with State Road 37 are compensable as a matter of law. We review this legal question de novo. *See State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 210 (Ind. 2009).

## Discussion and Decision

Both the United States Constitution and the Indiana Constitution prohibit the government from taking private land "without just compensation." U.S. Const. amend. V; Ind. Const. art. 1, § 21.[3] In an eminent domain action such as this, statute provides the process for assessing such compensation and other damages owed. *See* Ind. Code § 32-24-1-9. That assessment includes the "fair market value" of the

---

[2] We granted the petitions to address whether Franciscan or SCP were entitled to damages from the State's closure of Fairview Road at State Road 37. We summarily affirm the Court of Appeals on the remaining issues. App. R. 58(A)(2).

[3] We have previously found that "the state and federal takings clauses are textually indistinguishable and are to be analyzed identically." *Kimco*, 902 N.E.2d at 210. This case does not provide us with an opportunity to revisit whether Article 1, Section 21 provides distinct rights in cases involving takings. While both Franciscan and SCP invoked Section 21 in their briefing, neither party argued for a different analysis under that provision.

property to be acquired, as well as damages "to the residue of the property" that the owner retains. *Id.* § -9(c)(1)–(3). But there is no constitutional or statutory right to compensation for damages that do not result from a taking. *See Kimco*, 902 N.E.2d at 212–13. And when a case involves both physical takings and losses from other roadway improvements, these are treated as "distinct actions, even if concurrent." *Id.* at 216.

Here, there is no question that the State's condemnation of Franciscan's 0.632-acre strip of land is a taking requiring just compensation. Likewise, it is indisputable that this condemnation amounted to a taking of SCP's easement rights over that strip of land. But the record confirms that the State has already paid compensation for those easement rights. Thus, the only question for us to resolve is whether either Franciscan or SCP was entitled to damages stemming from the State's closure of Fairview Road's intersection with State Road 37.

Answering this question turns on whether these damages resulted "directly from the taking of some property right." *State v. Ensley*, 164 N.E.2d 342, 348 (Ind. 1960). The State asserts that, as a matter of law, neither Franciscan nor SCP can recover damages from the intersection closure because such damages are related to increased "circuity of travel" rather than "the taking of the strip of land in this case." Franciscan counters that this is "not a circuity-of-travel case," arguing that it "suffered a significant injury due to impairment of access, not mere inconvenience arising from a change in the flow of traffic." SCP similarly asserts that when "there is a taking, just compensation also includes any damages or loss in value attributable to the project as a whole." We agree with the State.

We first review our precedent and reaffirm the long-established rule that when a property's access points remain unchanged, the landowner cannot recover damages related only to increased circuity of travel between the property and a public roadway because such damages do not result from the taking of a property right. We then apply this rule and hold that neither Franciscan nor SCP was entitled to damages based on the closure of Fairview Road's intersection with State Road 37. That

intersection closure did not affect Franciscan's or SCP's points of access to their properties. Rather, all damages claimed by both parties from the closure were based entirely on traffic being either diverted from their properties or made to travel a longer route. And because such change in traffic flow is not a deprivation of a property right, Franciscan's and SCP's damages from the intersection closure were not compensable as a matter of law. We thus reverse the trial court's judgment and remand for proceedings to determine only the just compensation owed to Franciscan for its 0.632-acre strip of land.

## I. Damages are compensable in an eminent domain action only if they result directly from the taking of a property right.

When an Indiana landowner claims damages based on loss of access due to reconfigured roadways, two legal principles developed through our common law are well-settled: a landowner cannot recover damages for changes in traffic flow past their property; and a landowner can recover damages when ingress and egress to their property is actually or constructively eliminated.

The first principle, which applies in traffic-flow cases, was first announced nearly sixty-five years ago in *State v. Ensley*, where we held there is no taking when a roadway project merely makes ingress and egress to a property "more circuitous and difficult." 164 N.E.2d at 348. In that case, the State condemned a strip of commercial land to widen a road and installed a divider strip in the center of the new road. *Id.* at 344–46. Although these improvements did not change the property's access points, the divider strip forced northbound traffic to travel about a block further to reach the entrance. *Id.* at 346. The property owners claimed, and the jury awarded, damages based on the divider because motorists had to travel a longer distance to access the property, which decreased its value. *Id.* at 345–46.

In reversing the judgment, this Court concluded that the damages were not the "direct result of the taking of" a property interest but resulted

"from the manner in which the highway [was] constructed." *Id.* at 345. And we concluded that "to recover for the alleged impairment of their right of access," a landowner "must suffer a particular private injury, and not merely an inconvenience or annoyance." *Id.* at 347. Although inconvenience due to the divider might have resulted "in some damage to" the owners' business, we ultimately held that the owners had "no property right in the free flow of traffic past their place of business." *Id.* at 350. So while the owners were entitled to compensation for the appropriated strip of the land, the jury's verdict was "contrary to law" because it included non-compensable damages. *Id.* at 351.

After *Ensley*, this Court confirmed the second principle, which applies in cases involving a property's ingress and egress points. Because a landowner has a property interest in maintaining access from their property to a public roadway, there is a taking when this right is actually or constructively eliminated. *See id.* at 348; *see also, e.g.*, *State v. Tolliver*, 205 N.E.2d 672, 677–78 (Ind. 1965). For example, in *Tolliver*, the construction of an interstate closed a road to the north of a landowner's steel-fabrication plant. 205 N.E.2d at 673. Though the property's access point was left untouched, traffic could subsequently only reach it by crossing a bridge that could not bear the fifty-ton loads regularly transported from the plant. *Id.* Thus, the landowner had constructively lost all access to their business. *See id.* at 678. As a result, we recognized that the injury to the landowner's business "was far greater and of a kind and nature different from the injury suffered by the general public." *Id.* And so, the landowner had been deprived of a property right, requiring compensation. *Id.*

Most recently, we reaffirmed the distinction between these two principles and refined them in *State v. Kimco of Evansville, Inc.* There, the State initiated eminent domain proceedings to acquire a 0.154-acre strip of land along the border of a shopping center to widen a road and improve traffic to and from a nearby expressway. 902 N.E.2d at 208. As part of the project, the State also installed a raised median that prevented southbound traffic from using one of the center's entrances. *Id.* at 209. The owner claimed loss-of-access damages and presented evidence at trial that the median restricted access to one of the entrances, increased congestion,

made the complex undesirable to retail tenants, and decreased occupancy. *Id.* A jury awarded the owner $2.3 million in damages. *Id.* at 210.

We reversed, holding the verdict was "excessive as a matter of law" because the loss-of-access damages were not compensable. *Id.* at 216. In reaching that decision, we distinguished between the taking of the 0.154-acre strip of land and the effects of the road improvements. *Id.* at 211. Addressing the latter, we held the owner was not entitled to damages based on the roadway improvements because, although they affected traffic flow and prevented expansion of ingress and egress points, they left the existing points in place. *Id.* at 208, 214. We also confirmed that our takings framework no longer considers whether damages are "special and peculiar to the real estate and not some general inconvenience suffered alike by the public." *Id.* at 211 & n.6 (quotations omitted).[4] And we clarified that while evidence of changes to a property's "highest and best use" is admissible to determine the amount of compensation owed, it is irrelevant to establishing whether a taking has occurred. *Id.* at 215.

Distilling these decisions, and others, results in the following framework. When a property's ingress and egress points remain unchanged, the landowner cannot recover damages based only on increased circuity of travel between the property and a public roadway because those damages do not result from the taking of a property right. *See, e.g.*, *Ensley*, 164 N.E.2d at 350; *Young v. State*, 246 N.E.2d 377, 380 (Ind. 1969); *Kimco*, 902 N.E.2d at 208; *Jenkins v. Bd. of Cnty. Comm'rs of Madison Cnty.*, 698 N.E.2d 1268, 1271 (Ind. Ct. App. 1998), *trans. denied*; *Old Romney Dev. Co. v. Tippecanoe Cnty.*, 817 N.E.2d 1282, 1288 (Ind. Ct. App. 2004); *Canteen Serv. Co. of Indianapolis v. Ind. Dep't of Transp.*, 932 N.E.2d 749, 754 (Ind. Ct. App. 2010); *Green River Motel Mgmt. of Dale, LLC v. State*, 957 N.E.2d 640, 644–45 (Ind. Ct. App. 2011), *trans. denied*; *AAA Fed. Credit Union v. Ind. Dep't of Transp.*, 79 N.E.3d 401, 405 (Ind. Ct. App. 2017), *trans. denied*. But when a property actually or constructively loses ingress and

---

[4] Given this evolution in the law, Indiana Model Civil Jury Instruction 3729 incorrectly states, in part, that damages can be awarded only when a property's "loss of access is special and unique to [the] property and not the inconvenience suffered by the general public."

egress points between the property and a public roadway, the landowner can recover damages because they result from the taking of a property right. *See, e.g.*, *State v. Geiger & Peters, Inc.*, 196 N.E.2d 740, 743 (Ind. 1964); *Tolliver*, 205 N.E.2d at 677–78; *State v. Hastings*, 206 N.E.2d 874, 876–78 (Ind. 1965); *Papp v. City of Hammond*, 230 N.E.2d 326, 334–35 (Ind. 1967); *State v. Diamond Lanes, Inc.*, 242 N.E.2d 632, 634–35 (Ind. 1968); *State v. Peterson*, 381 N.E.2d 83, 84–85 (Ind. 1978); *Coutar Remainder I, LLC v. State*, 91 N.E.3d 610, 615–16 (Ind. Ct. App. 2017), *trans. denied*. And so, to the extent any cases decided before *Kimco* held that damages in an eminent domain action need not be tied to the taking of a property right, we disapprove of them. *See City of Hammond v. Marina Ent. Complex, Inc.*, 733 N.E.2d 958, 965–66 (Ind. Ct. App. 2000), *trans. denied*; *Murphy Breeding Lab'y, Inc. v. W. Cent. Conservancy Dist.*, 828 N.E.2d 923, 929 (Ind. Ct. App. 2005).

We acknowledge that changes in societal habits around shopping, travel, and convenience have naturally evolved since *Ensley* was decided in 1960 and even since *Kimco* was decided in 2009. But in an eminent domain action, these changes simply have no bearing on whether the State has deprived a landowner of a property right. To determine whether state action has resulted in the taking of such a right, Indiana courts examine the impact on points of ingress and egress—not the impact on convenient travel to a property through a desired choice of road.

With the proper framework in hand, we now apply it to determine whether Franciscan or SCP was entitled to damages based on the closure of Fairview Road's intersection with State Road 37.

## II. Neither Franciscan nor SCP was entitled to damages from the intersection closure because they did not result directly from the taking of a property right.

As established above, it is uncontested that the State's taking of Franciscan's 0.632-acre strip of land requires just compensation, and thus evidence of its fair market value was admissible during trial. I.C. § 32-24-

1-9(c)(1), (2). Additionally, as SCP presented no evidence of damages related to their drainage easement and conceded that the State's settlement with Market Place provided compensation for any damage to the drainage system, we conclude that any taking of their easement rights has been compensated. Thus, the only question is whether Franciscan or SCP was entitled to produce evidence about and claim damages resulting from the intersection closure at Fairview Road.

Here, the State was not required to initiate eminent domain proceedings to close the intersection, as it was in the State's right-of-way. So for Franciscan or SCP to be entitled to damages from that closure, they must show it resulted in the taking of a property right. *Kimco*, 902 N.E.2d at 213. They have not made this showing.

Takings cases are fact-sensitive, particularly those dealing with traffic-flow issues and ingress-egress rights. *See id.* at 213–14. And this is not an ingress-egress case, as it is undisputed that the State's closure of Fairview Road's intersection with State Road 37 did not affect Franciscan's or SCP's access points to their respective properties. Indeed, neither landowner had direct ingress and egress to State Road 37 before the I-69 project. Both before and after the project, Franciscan's ingress and egress to its property are through Bluff Road, and SCP's are through Marketplace Drive. Thus, neither Franciscan's nor SCP's ingress-egress points have been actually or constructively eliminated.

Rather, this is a traffic-flow case, as all evidence of both Franciscan's and SCP's damages based on the intersection closure resulted only from changes in traffic flow. Franciscan's appraisal reports and SCP's appraisal report assessed these damages only from the resulting increased circuity of travel to the respective properties that would "negatively affect" their commercial use. Consistent with these findings, Franciscan's and SCP's appraisers testified during trial that the intersection closure changed the properties' "highest and best use" by increasing travel distance to the properties. For example, one of Franciscan's appraisers testified that the "impact" of the I-69 project—specifically the intersection closure—on Franciscan's property was "dramatic" due to the "loss of convenient access" for those driving on the highway. Franciscan's other appraiser

similarly highlighted only the intersection closure and resulting increased circuity of travel as changing the value of Franciscan's remaining property. And SCP's appraiser likewise testified that the intersection closure affected the "valuation" of the CVS store by removing its "easy access and good visibility" from the highway. None of Franciscan's or SCP's evidence pointed to anything but the intersection closure and increased circuity of travel to support their claim of damages exceeding the value of the strip of Franciscan's appropriated land.

To summarize, none of Franciscan's or SCP's claimed damages from the Fairview Road intersection closure were based on either the State's taking of Franciscan's 0.632-acre strip of land or on any changes to either property's points of ingress or egress. Instead, those damages resulted only from traffic being either diverted from their properties or made to travel a longer route to and from the highway. And because such change in traffic flow to a property is not a deprivation of a property right, Franciscan's and SCP's damages from the intersection closure were not compensable as a matter of law. Thus, the trial court committed reversible error in admitting Franciscan's and SCP's evidence of damages related to the intersection closure, as that evidence led to the jury awarding both parties non-compensable damages. We therefore reverse the trial court's judgment for Franciscan and SCP. And because each appraiser provided a different amount owed to Franciscan for its 0.632-acre strip of land, we remand for proceedings to determine the just compensation owed to Franciscan for the land taken.

## Conclusion

For the reasons articulated above, we reverse and remand for proceedings consistent with this opinion.

Massa, Slaughter, Goff, and Molter, JJ., concur.

ATTORNEYS FOR APPELLANT STATE OF INDIANA

Theodore E. Rokita
Attorney General of Indiana

Frances Barrow
Benjamin M. L. Jones
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE FRANCISCAN ALLIANCE, INC.

Paul D. Vink
Seema R. Shah
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE SCP 2010-C36-018, LLC

Andrielle M. Metzel
Taft Stettinius & Hollister, LLP
Indianapolis, Indiana

Ryan Simatic
Biersdorf & Associates, PA
Minneapolis, Minnesota