DORIS ANN BECK, ET AL. *v.* STATE OF INDIANA.

[No. 469S72. Filed April 22, 1971. No petition for rehearing filed.]

*John L. Carroll, Charles C. Griffith, Johnson and Carroll,* of counsel, of 'Evansville, for appellants.

*Theodore L. Sendak,* Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

GIVAN, J.—The State of Indiana filed an action in condemnation against the appellants for the acquisition of certain land for the purposes of improving an existing highway, including the establishing of a limited access highway where a full

access highway had previously existed. Trial by jury resulted in a verdict for the appellants wherein the jury found the fair market value of the real estate appropriated to be $3200, and that there was no damage to the residue caused by the taking, thus giving a total damage in the amount of $3200.

The following facts are shown by the record:

Appellants were the owners of a vacant tract of 37.35 acres of land located in Vanderburgh County near the city of Evansville. The land was zoned under the Zoning Code of Vanderburgh County for commercial purposes. The land was bordered on the west by various tracts of improved real estate, including a K-Mart Shopping Center. It was bordered on the north by Allen Road, on the east by Locust Creek and certain other unimproved properties and on the south by U. S. Highway No. 460, which prior to the take bisected the appellants' property leaving a triangular piece on the south side of Highway No. 460 which was .493 acres in size. Highway No. 460 at this particular point traversed the flood plain of Locust Creek and was constructed some six to ten feet above grade level. The evidence was that a large portion of the appellants' land lay in the flood plain area. Prior to the taking the appellants had approximately 862 feet of frontage on U. S. Highway 460 along the north side of the highway (the south boundary of the main tract of their real estate) and 396.55 feet of frontage on the small triangular piece lying to the south of the highway.

By its complaint the appellee sought to condemn 1.597 acres most of which was taken from the main tract of land, but a small portion of which was taken from the small triangular piece lying south of the highway. The remaining small portion of the triangular tract south of the highway was completely cut off by the limited access fence and therefore was considered as a total take by the appraisers who testified for the State.

Appellants main body of land was cut off from Highway 460 by the limited access fence beginning at the eastern intersec-

tion of the highway right-of-way and appellants' property and extending westward along the right-of-way line to a point near appellants' west boundary where it was terminated leaving an opening 179 feet in width, leaving the appellants an access to a frontage road which entered Highway 460 at that point.

Appellants claim error in the giving of appellee's tendered Instruction No. 3, which instruction reads as follows:

"Loss of access is only compensable and may be considered by you in determining the damages to be awarded the defendants only when such loss of access is special and peculiar to this property, and only when no other reasonable means of access is available to the property."

It is appellants' position that the above instruction is erroneous for several reasons. First, that the appellee by its complaint specifically sought to extinguish all easement and right of access over appellants' property to Highway 460; therefore, the appellants must receive compensation for such a taking.

Second, appellants claim that the right of access and the easement of access is an absolute property right appertaining to property ownership and the extinguishment of such a right in whole or in part is a "taking" within the meaning of just compensation under the Indiana Constitution and that the instruction purports to qualify this property right and make it relative to such other similar rights as the property owner might have.

Third, that the use of the words "special and peculiar" in his instruction have no relevance to the loss of access being applicable only to the determination of benefits. Thus, the instruction is ambiguous and misleading.

In support of these contentions the appellants first cite Burns Ind. Stat. Ann. § 36-3101 *et seq.* whereby the State acquires its right to condemn access for the construction of limited access highways. There is no question but what this statute in empowering the highway depart-

ment to construct limited access facilities provides for payment of damages to property owners when their rights of ingress and egress are taken or substantially impaired. This Court held in *State v. Geiger & Peters, Inc.* (1964), 245 Ind. 143, 196 N. E. 2d 740, 3 Ind. Dec. 133, that where the property owner had an existing drive to a place of business where large prefabricated steel beams were required to pass, the impairment of such entrance to the point that it could no longer be used for the transportation of the steel beams was a compensable damage to their existing ingress and egress.

In *State v. Tolliver* (1965), 246 Ind. 319, 205 N. E. 2d 672, 5 Ind. Dec. 193, the property owners conducted an ornamental iron prefabrication business located several hundred feet south of the highway construction. Trucks bringing raw materials to the place of business and hauling finished products away had previously traveled over a county highway from the property owner's plant northward a short distance to the main highway. After the construction in question the county road was closed by the limited access fence, thus requiring trucks hauling to and from the place of business to travel a circuitous route over county roads to the south of the property and in so doing to pass over a small county bridge which had a weight capacity far below the loads required in conducting the iron prefabricating business. In that case this Court held that the property owner had suffered a compensable damage by the closing of the short stretch of county road between the plant and the main highway.

Appellants rely, among other things, on the above two cases to support their argument that the above instruction does not correctly state the law in Indiana. We would point out, however, that in both the above cases the property owners had existing businesses which for some time prior had made specific use of their existing access to the highway. In each instance they suffered particular and measurable damages by reason of impairment of the use of the existing ingress and egress easement. In the case at bar, how-

ever, we have unimproved ground with no existing driveway entering upon Highway 460 prior to the construction in question. It is true that the existence of the highway across the appellants' lands prior to the acquisition of limited access facilities gave the abutting property owners a right of ingress and egress from their property to the highway. This does not mean, however, that they were entitled to free access at every foot along their road frontage. This right has been interpreted by this Court to mean an easement of ingress and egress from the property to the highway. In *State* v. *Ensley* (1960), 240 Ind. 472, 164 N. E. 2d 342, one of the issues before the Court was the giving of an instruction over the objection of the State that the property owners were entitled to a right of " . . . egress and ingress to their premises *for the full length of the abutment of said real estate upon such highway . . . .*" This Court held that the trial court erred in giving such an instruction and in so holding stated at page 491:

> "The owners of abutting real estate are not entitled to 'egress and ingress to their premises *for the full length of the abutment of said [the] real estate upon such [a] highway.*'"

This Court stated in *State* v. *Stefaniak* (1968), 250 Ind. 631, 638, 238 N. E. 2d 451, 14 Ind. Dec. 649, that in matters of this kind the question of the amount of damages, if any, is a matter for the jury's determination. We, therefore, hold that the trial court did not err in giving State's Instruction No. 3. The instruction permitted the jury to determine from the evidence whether the access remaining from Highway 460 to the property in question was a reasonable means of access under the circumstances and whether or not the property owners had suffered a compensable damage as a result of the cutting off of a portion of the road frontage by the construction of a limited access fence.

Appellants next claim the verdict of the jury was defective in that the jury failed to make an award for damages to the

residue of appellants' real estate when the evidence was uncontradicted that a portion of appellants' real estate was completely landlocked. Paul Hatfield, one of the appraisers for the state, in summarizing his testimony stated in referring to the landlocked piece of ground ". . . taking into consideration you are wiping out one piece of ground in my opinion . . . ." that the total damage suffered by the appellants was $1,008.20. Thus, there was evidence before the jury of damages far less than the amount of the jury award, taking into consideration that the landlocked piece of ground had been completely taken. The fact that the jury did not spell this out as a damage to the residue does not mean they did not take this into consideration in fixing the amount of total damage. We have above dealt with the contention of the appellants concerning damage to the residue of their larger tract of land. We, therefore, hold that the jury verdict was not defective as alleged by the appellants.

The trial court is affirmed.

Arterburn, C. J., DeBruler and Hunter, JJ., concur; Prentice, J., concurs with opinion.

### CONCURRING OPINION

PRENTICE, J.—I concur in the result but for reasons somewhat different than those expressed in the majority opinion.

Whether or not appellants are entitled to damages for loss of access depends upon whether or not such loss affects the highest and best use to which the land could be devoted. If reduced access has not affected such use, then clearly it has not affected the value of the residue. That the appellants' land was unimproved at the time of the taking is immaterial, as its value is not determined by its current use.

The majority opinions upholds the validity of the instruction complained of, which I believe is bad by reason of the last phrase "* * * and only when no other reasonable means of access is available to the property". The reasonableness of

the access depends upon the use to which the land is to be devoted. If land has 1000 feet of frontage upon a main highway and 50 feet of frontage on a secondary and less desirable road, but its highest and best use is agricultural, the loss of full access to the main highway may be immaterial. If, however, the highest and best use would be to subdivide the land into ten one-hundred foot lots for residential home sites fronting upon the main highway, then the loss of the highway access has damaged the owner, notwithstanding that reasonable access for agricultural use is still available. The reasonableness of the access must be related to the highest and best use, and the instruction may have been misleading inasmuch as this element was not provided for. However, appellants did not raise this question in their written objections to the instruction thus the error is not available. Rule 1-7 (2), Rules of the Supreme Court I.L.E. *Appeals* § 95.

The verdict of the jury was clearly defective in that it found no damages to the residue of the appellants' real estate caused by the taking, notwithstanding that a small portion of appellants' land on the south side of the highway was left landlocked. The majority has held that the fact that the jury did not spell this out as a damage to the residue does not mean that they did not take it into consideration in fixing the amount of total damage. But neither does it mean that they did take it into consideration. There were two issues to be determined by the jury: (1) The fair market value of the real estate appropriated, and (2) the damage to the residue of the real estate caused by the taking. However, the landlocked residue is so minute and so situated that it is altogether proper that the rule de minimis be applied. The fallacy of the majority statement lies in its possible application in situations where the de minimis rule is not applicable

NOTE.—Reported in 268 N. E. 2d 746.