ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

David L. Steiner
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR AMICI CURIAE
INDIANA ASSOCIATION OF CITIES AND TOWNS
INDIANA MUNICIPAL LAWYERS ASSOCIATION
Douglas D. Church
Fishers, Indiana

ATTORNEYS FOR APPELLEES
Gerard T. Carmody
Kelley F. Farrell
Erwin O. Switzer
St. Louis, Missouri

R. Thomas Bodkin
Evansville, Indiana



# In the
# Indiana Supreme Court

No. 82S01-0806-CV-308

STATE OF INDIANA,

*Appellant (Plaintiff below),*

v.

KIMCO OF EVANSVILLE, INC.,
N/K/A KCH ACQUISITION, INC.,
THE FRANKLIN LIFE INSURANCE
COMPANY, AND VANDERBURGH
COUNTY, INDIANA

*Appellees (Defendants below).*

Appeal from the Vanderburgh Circuit Court, No. 82C01-0006-CP-315
The Honorable Carl A. Heldt, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 82A01-0607-CV-301

**March 4, 2009**

**Boehm, Justice.**

In <u>State v. Ensley</u>, 240 Ind. 472, 164 N.E.2d 342 (1960), this Court held that roadway improvements that reduce or interfere with traffic flow to a commercial property do not constitute takings of a property right of the owner of the property. We reaffirm <u>Ensley</u> and hold that the shopping center owners are not entitled to consequential damages from street reconfigurations that affect traffic flow through the center and prevent expansion of existing points of ingress or egress, but leave existing points in place.

## Facts and Procedural History

Kimco owns the Plaza East Shopping Center in Evansville. Plaza East is an open-air shopping complex bordered by Lloyd Expressway on the south and Green River Road on the west. As shown on the schematic diagram in Appendix A, retail stores are located on the north and east sides of a roughly square property, and a parking area occupies the area to the south and west. There are two main entrances/exits to the center, both on Green River Road.[1] The southern entrance has three lanes and opens into Plaza East's parking lot. The northern entrance has two lanes and is situated near the northern strip of storefronts.

Before the construction at issue in this case, both northbound and southbound traffic on Green River Road could use the southern entrance to enter or exit the center. The northern entrance provided access for both north and southbound traffic, but permitted only northbound exits (right turns) due to a "no left turn" sign and a concrete divider in the entrance.[2]

In 2000, the State filed its Complaint seeking to acquire a 0.154-acre strip of land along the western border of Plaza East to widen Green River Road and improve traffic flow to and

---

[1] Cars can also enter the complex from the east leg of Plaza East Boulevard, which borders the shopping center on the north and east. Because of limited visibility and access from major arteries, Plaza East Boulevard is not considered a principal entry to the mall. At one time Plaza East had entrances along its southern boundary. However, in a previous taking not at issue here, the State condemned the southern access points to construct part of the Lloyd Expressway, a limited access expressway. Kimco was compensated for that taking following a jury trial in 1989.

[2] There are assertions in the record that only northbound traffic could access the northern entrance prior to the roadway reconstruction. But the photographs and other exhibits show that southbound traffic on Green River Road could access the northern entrance as well.

2

from Lloyd Expressway. The State also sought the "permanent extinguishment of all rights and easements of ingress and egress to, from and across" Green River Road along the length of the acquired property. As a practical matter this would preclude Plaza East from adding new entrances on Green River Road or widening its existing access points. The State also requested a temporary construction easement giving the State access to the center's parking lot for the duration of the project. In October 2000, the trial court issued an Order of Appropriation allowing the State to proceed with the condemnation. Kimco requested a jury trial on the issue of damages.[3]

In the ensuing four and one-half years, the State added and reconfigured the lanes on Green River Road, modified the Lloyd Expressway intersection, and installed a raised median in Green River Road that prevented southbound traffic from using the center's southern entrance for ingress or egress. The State created a merge lane on the eastern side of Green River Road for northbound traffic exiting from Lloyd Expressway. Northbound motorists on Green River Road now must use the merge lane, defined by a solid white line in the 0.154-acre strip, to access Plaza East's southern entrance. Finally, the northern entrance was changed to permit full ingress and egress by removing the concrete divider and allowing exiting traffic to turn left onto South Green River. The width of both the northern and southern entrances to Plaza East remained unchanged.

The case proceeded to trial in February 2006. During Kimco's case-in-chief, evidence of "loss of access" at Plaza East and its effect on the shopping complex included testimony that (1) the new median and merge lane restricted motorists' access to the mall's southern entrance; (2) the impaired access at the southern entrance, combined with allowing left turns at the northern drive, created unsafe congestion at the northern entrance near the Plaza East storefronts; (3) the road reconfigurations made the shopping complex undesirable to retail tenants; and (4) Plaza

---

[3] After the State filed its complaint, Kimco initially failed to enter an appearance in the case. The trial court subsequently issued its Order of Appropriation and instructed court-appointed appraisers to calculate damages. The appraisers assessed the State's taking at $95,300.00 and the trial court ordered the State to compensate Kimco accordingly. In May 2001, Kimco entered an appearance alleging that it had not received service of process and was unaware of the condemnation action. After the parties agreed to reinstate the litigation, Kimco filed exceptions to the court-sanctioned appraisal, and requested a jury trial on the issue of damages.

3

East's occupancy had dropped by nearly forty percent due to the access problems. Kimco's appraiser testified that Plaza East depreciated from a preconstruction value of $7,300,000 to roughly $5,000,000 due in large part to the access issues. He assessed the value of the property acquired by the State at $67,000 for the strip and $8,400 for the temporary construction easement, and assigned a value of $2,233,000 to the impaired access and any remaining "cost-to-cure," i.e., damage to the residual property.

The State unsuccessfully moved for judgment on the evidence at the close of Kimco's case on the ground that impaired access at Plaza East was not compensable. Following the close of the evidence, the State objected to the "submission of the issue of compensability of access rights to the jury" and reiterated its prior objection to the admission of loss-of-access evidence. The trial court, over objection of the State, instructed the jury as follows:

> In order for you to award damages for loss of access, Kimco must have suffered a particular, private injury resulting from a substantial and material interference with Kimco's rights of ingress and egress which are special and peculiar to this property and when no other reasonable means of access are available.
>
> You may not award damages for loss of access if the remaining access is merely more inconvenient or difficult, as long as it is reasonable.
>
> "Other reasonable means of access," as used in this instruction, does not mean access that is reasonable for some other use of the land. Rather, it refers to the access that will permit the land to be used for that purpose regarded as its highest and best use immediately before the taking.

The jury awarded Kimco $2,300,000.[4]

The State appealed, arguing that the trial court erred by admitting Kimco's loss-of-access evidence and by giving the quoted instruction. See State v. Kimco of Evansville, Inc., 881 N.E.2d 987 (Ind. Ct. App. 2007). The Court of Appeals affirmed, concluding that the sum of the State's roadway improvements created an injury to Plaza East that amounted to more than mere inconvenience, and that Kimco suffered a taking of its access rights as a matter of law. Id. at 995. The Court of Appeals held that the trial court therefore properly admitted Kimco's loss-of-

---

[4] The trial court entered a total judgment in the amount of $3,196,859.82, reflecting the addition of $896,859.82 in prejudgment interest. See Ind. Code § 32-24-1-11(d)(6) (2004) ("In any trial of exceptions, the court or jury shall compute and allow interest at an annual rate of eight percent (8%) on the amount of a defendant's damages from the date plaintiff takes possession of the property.").

4

access evidence and that the court properly instructed the jury on the compensability of lost access. Id. We granted transfer.

There is no dispute in this case that the State's appropriation of the 0.154-acre strip and the temporary construction easement were compensable takings entitling Kimco to damages. These physical takings, apart from the roadway improvements, were valued at no more than $100,700.[5] Therefore, the jury award of $2.3 million is sustainable only if Plaza East's impaired access is compensable.

## Standard of Review

The State challenges the jury verdict as excessive. In particular, the State appeals the admission of evidence relating to the median, merge lane, and traffic flow problems at Plaza East, and the loss-of-access instruction to the jury. These claims all turn on the State's contention that any effects on the access to Plaza East from the State's roadway improvements are not compensable as a matter of law. We therefore review under a de novo standard. See Biddle v. BAA Indianapolis, LLC, 860 N.E.2d 570, 575 (Ind. 2007).

## I. The Constitutional Background

Article I, section 21 of the Indiana Constitution provides that "No person's property shall be taken by law, without just compensation; nor, except in case of the State, without such compensation first assessed and tendered." The Fifth Amendment of the U.S. Constitution similarly provides that "nor shall private property be taken for public use, without just compensation." The Fifth Amendment's Takings Clause applies to the states via the Due Process Clause of the Fourteenth Amendment. Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 160 (1980); Chi., Burlington & Quincy R.R. v. City of Chicago, 166 U.S. 226, 241 (1897). We have held that the state and federal takings clauses are textually indistinguishable and are to be ana-

---

[5] The State's appraiser testified that the value of the taking—consisting only of the appropriated strip of land, the temporary construction easement, and any cost-to-cure—was $58,000. The State's appraiser had assessed the taking at $100,700 in a previous report. The appraiser explained that his prior assessment was a limited appraisal done for purposes of negotiation.

5

lyzed identically.  Cheatham v. Pohle, 789 N.E.2d 467, 472–73 (Ind. 2003) (citing B & M Coal Corp. v. United Mine Workers of Am., 501 N.E.2d 401, 406 (Ind. 1986)).

There is no question that an exercise of eminent domain, such as the condemnation of the 0.154-acre strip in this case, is a constitutional "taking."  Other forms of governmental action, however, are "takings" only if they meet the prevailing federal standard, which is that government action effects a taking if it deprives an owner of all or substantially all economic or productive use of his or her property.  Lingle v. Chevron U.S.A., Inc., 544 U.S. 528, 538–40 (2005). Factors considered under the foregoing test include the economic impact of the regulation on the property owner, the extent to which the regulation has interfered with distinct investment-backed expectations, and the character of the government action.  Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124 (1978).  The effects of the road improvements on Plaza East, if viewed separately from the taking of the 0.154-acre strip, plainly do not meet the Lingle test.  Presumably for this reason Kimco presents its case in terms of Indiana case law.  Because recent constitutional takings cases to some extent have modified Indiana case law, a discussion of these constitutional cases is useful background.

In Biddle v. BAA Indianapolis, LLC, 860 N.E.2d 570 (Ind. 2007), we reviewed Indiana's eminent domain language and harmonized our takings analysis with the federal approach spelled out in Lingle and Penn Central.  Biddle was a Fifth Amendment case analyzing the compensability of aircraft noise near residential properties.  860 N.E.2d at 572–73.  In the course of distilling a takings framework to apply to the case, Biddle disapproved some earlier formulations of compensable actions either by eminent domain or some form of regulatory taking:[6]

> Some of our own inverse condemnation cases have labeled the required degree of harm for takings a "special" or "peculiar" injury. . . . This requirement has two aspects to it.  First, the injury must be different in kind from what the public experiences.  Second, the injury must be of a degree that exceeds mere inconvenience.

---

[6] Indiana courts, for example, have held that a taking in eminent domain includes "any substantial interference with private property which destroys or impairs one's free use and enjoyment of the property," Bd. of Comm'rs v. Joeckel, 407 N.E.2d 274, 278–79 (Ind. Ct. App. 1980) (citing State v. Stefaniak, 250 Ind. 631, 637, 238 N.E.2d 451, 454 (1968)), and that to be compensable the injury must be "special and peculiar to the real estate and not some general inconvenience suffered alike by the public."  Bussing v. Ind. Dept. of Transp., 779 N.E.2d 98, 104 (Ind. Ct. App. 2002) (citing Young v. State, 252 Ind. 131, 134, 246 N.E.2d 377, 379 (1969); State v. Jordan, 247 Ind. 361, 368, 215 N.E.2d 32, 35 (1966)), trans. denied.

6

> Neither of these seems to add much to the task of identifying takings. It merely states the obvious to observe that to have a plausible takings claim one must experience a burden not shared by the public generally. And one who suffers "mere inconvenience" likely possesses an extraordinarily weak takings claim.
>
> We think the Lingle analysis . . . is a more precise standard for measuring the degree of harm, one that will result in more consistent decisions.

Id. at 580 (citations omitted). Biddle involved a federal constitutional claim and dealt with the specific issue of aircraft noise in residential communities. But importantly, we expressed our disapproval of Indiana's traditional takings language and explained that the federal approach was more effective and practical, and would produce more uniform results. We reaffirm the view expressed in Cheatham and Biddle that our state constitutional takings analysis is the same as federal constitutional eminent domain law, as interpreted by Lingle and Penn Central.

Constitutional doctrine is not the end of the matter. Legislatures may confer greater rights to compensation for government action than those afforded by the constitutional takings clauses. Kelo v. City of New London, 545 U.S. 469, 489 (2005). The legislature in Indiana has arguably done so as to takings by exercise of eminent domain. In particular, the eminent domain act provides for the following bases of compensation in eminent domain proceedings:

> (1) The fair market value of each parcel of property sought to be acquired and the value of each separate estate or interest in the property.
>
> (2) The fair market value of all improvements pertaining to the property, if any, on the portion of the property to be acquired.
>
> (3) The damages if any, to the residue of the property of the owner or owners caused by taking out the part sought to be acquired.
>
> (4) The other damages, if any, that will result to any persons from the construction of the improvements in the manner proposed by the plaintiff.

Ind. Code § 32-24-1-9(c) (2004). As we will see, some cases have looked to this statutory language as the source of compensable damage in an eminent domain context.

## II. Medians, Traffic Flow, and State v. Ensley

Indiana law has specifically addressed the damages to adjacent landowners from reconfigured highways. Many of the principles applicable to this case come from this Court's opinion in State v. Ensley, 240 Ind. 472, 164 N.E.2d 342 (1960). In Ensley, the defendant property owners operated a recreational center in Indianapolis. 240 Ind. at 476, 480, 164 N.E.2d at 344, 346.

7

The property was bounded by Keystone Avenue on the east and 62nd Street on the north, with entrances on both streets. Id. at 476, 480–81, 164 N.E.2d at 344, 346. The Keystone entrance was approximately 65 to 68 feet wide and provided access to both northbound and southbound traffic on Keystone Avenue. Id. at 480, 164 N.E.2d at 346. The State condemned a strip of land along the property's eastern border to widen Keystone Avenue. Id. at 476, 164 N.E.2d at 343–44. The State also installed a raised median which prevented northbound traffic from making a left turn to enter from Keystone. Id. at 481, 164 N.E.2d at 346. Northbound motorists on Keystone were required to continue past the property, turn left on 62nd Street, and drive approximately one-half block to enter the property from the 62nd Street entrance. Id. Because of the raised divider strip and subsequent access restrictions, the recreational center's property value allegedly declined. Id. at 479, 164 N.E.2d at 345.

The Ensley Court held preliminarily that the median installation did not entitle the defendants to compensation under the Indiana Constitution. Id. at 482, 164 N.E.2d at 346. The Court explained that "acts done in the proper exercise of governmental powers and not directly encroaching on private property, although their consequences may impair its use or value, do not constitute a 'taking' within the purview of [Indiana Constitution article I, section 21]." Id. "Any injury so caused is deemed to be remote and inconsequential, and thus not compensable in the absence of an express statute to the contrary." Id. at 482, 164 N.E.2d at 346–47. Although not phrased in the Lingle language, the substance of this view anticipated a similar standard: any impaired value derived from some action that does not "encroach upon the property" is not compensable.

The property owners in Ensley argued that they were entitled to consequential damages from the median installation under a provision of the then-current eminent domain statute, which was substantially identical to subsection 9(c)(4) of the current version, and allowed compensation for damages "from the construction of the improvements in the manner proposed by the plaintiff." Burns Ind. Stat. Ann. § 3-1706 (1946 Repl.).[7] This Court disagreed, explaining that

---

[7] The statute provided for the following bases of compensation in eminent domain proceedings:

First. The fair market value of each parcel of property sought to be appropriated, and the value of each separate estate or interest therein;

to be compensable, damages "must result directly from the taking of some property right." 240 Ind. at 486, 164 N.E.2d at 348. The cited statute provides the measure of damages from a taking of a property right. It does not create a right to compensation where no taking has occurred. The Court held that the fact that access to appellees' property from Keystone Avenue may have been rendered less convenient by the improved highway did not constitute a taking of a property right. Id. The Court further explained that

> What appellees are actually contending here is that they have a property right in the free and unrestricted flow of traffic passing their premises and any impairment of, or interference with, this alleged right must be compensated. They here are attempting to equate this alleged "right" with the property right of ingress and egress. The general rule is that there is no property right of an abutting property owner in the free flow of traffic past his property and thus no compensation can be claimed if traffic is diverted from his premises or made to travel a more circuitous route.

Id. at 489, 164 N.E.2d at 350. The Court concluded that because the owners had "no property right in the free flow of traffic past their premises," the construction of the median did not deprive them of a property right and no compensable taking had occurred. Id. at 490, 164 N.E.2d at 350.

The principles announced in Ensley have since been applied and clarified in a series of eminent domain cases dealing with traffic flow issues and rights of ingress/egress.[8] Each of

---

> Second. The fair market value of all improvements pertaining to the realty, if any, on the portion of the real estate to be condemned;
>
> Third. The damages, if any, to the residue of the land of such owner or owners to be caused by taking out the part sought to be appropriated;
>
> Fourth. Such other damages, if any, as will result to any persons or corporation from the construction of the improvements in the manner proposed by the plaintiff.

Burns Ind. Stat. Ann. § 3-1706 (1946 Repl.).

[8] State v. Geiger & Peters, Inc., 245 Ind. 143, 150–51, 196 N.E.2d 740, 743 (1964) (finding a compensable taking where the State constructed a fence and embankment cutting appellees off from the highway); State v. Hastings, 246 Ind. 475, 479–83, 206 N.E.2d 874, 876–78 (1965) (requiring compensation where "right of ingress and egress formerly enjoyed by appellees ha[d] been taken"); State v. Tolliver, 246 Ind. 319, 332, 205 N.E.2d 672, 678 (1965) (finding a taking where the closing of the highway removed "any suitable access to [appellees'] steel fabricating business"); State v. Jordan, 247 Ind. 361, 366–69, 215 N.E.2d 32, 34–36 (1966) (finding no compensable taking where drug store experienced declining patronage on account of road construction); Papp v. City of Hammond, 248 Ind. 637, 646–53, 230 N.E.2d 326, 332–35 (1967) (holding that filling station owner was not entitled to damages for loss of business where construction rendered abutting streets impassable); State v. Diamond Lanes, Inc., 251 Ind. 520, 523–24,

these cases addresses a unique set of facts, but collectively they affirm the distinction first drawn in Ensley: although an elimination of rights of ingress and egress constitutes a compensable taking, the mere reduction in or redirection of traffic flow to a commercial property is not a compensable taking of a property right. See also State v. Dunn, 888 N.E.2d 858, 864–66 (Ind. Ct. App. 2008) (explaining the differences between traffic-flow cases and the ingress/egress cases), trans. denied.

Here, as in Ensley, the subject property had two points of access. The State appropriated a strip of land from the property to widen an abutting road, and as part of the same project the State constructed a median preventing southbound access through the southern entrance. Moreover, because of the restrictions on new access points along the appropriated strip of land, the owners cannot widen or move the entrances to the property. Neither of the property's existing access points has been eliminated or narrowed as a result of the condemnation. Nor have any of the reconfigurations deprived the owners of their rights of ingress or egress. The only substantive allegation is that traffic flow to the shopping complex has been encumbered. Under Ensley and its progeny, these consequences from the State's roadway improvements are not compensable because no property right has been taken.

The Court of Appeals distinguished this case from Ensley by noting that here the State not only constructed a raised median converting Plaza East's southern entrance to a right-in/right-out drive, but also added a merge lane to Green River Road and created unsafe congestion problems at the northern entrance. Kimco, 881 N.E.2d at 995. We agree that the merge lane and northern entrance congestion are two aspects of this case that were not present in Ensley. But neither the merge lane nor the northern entrance congestion affects the fundamental point that these consequences are not attributable to the deprivation of any property right. The Ensley

---

242 N.E.2d 632, 634 (1968) (finding sufficient evidence of compensable taking where "appellee's access ha[d] been both materially and substantially obstructed and reduced," at least one access point was "completely eliminated," and the substituted access could "in no way be equated with the former access"); Beck v. State, 256 Ind. 318, 320–23, 268 N.E.2d 746, 747–49 (1971) (holding that loss-of-access instruction was properly submitted to the jury where property owners' "main body of land was cut off from [h]ighway" by a limited access fence); Bussing v. Ind. Dept. of Transp., 779 N.E.2d 98, 105 (Ind. Ct. App. 2002) (affirming judgment that no compensable taking occurred, where median installation and elimination of left turn lane "simply require[d] drivers to travel a more circuitous route" to apartment complex), trans. denied.

Court held unequivocally that commercial property owners "have no property right in the free flow of traffic past their premises." 240 Ind. at 490, 164 N.E.2d at 350. Any difficulty that northbound traffic may experience with the merge lane, and any congestion that may arise at the northern entrance from the permission of left turns, bear only on the issue of public traffic flow through the property and not on Kimco's rights of ingress of egress.

Kimco notes that the State obtained "permanent extinguishment of all rights and easements of ingress and egress" along the appropriated strip of land. But the effect of this order is simply to preserve Plaza East's entrances and confine Plaza East to the access points it enjoyed before the taking. The State did not extinguish any existing points of ingress or egress. And it is well settled that a "property owner is not entitled to unlimited access to abutting property at all points along the highway." Ensley, 240 Ind. at 486, 164 N.E.2d at 348; see also Beck v. State, 256 Ind. 318, 323, 268 N.E.2d 746, 749 (1971) ("It is true that the existence of the highway across the appellants' lands prior to the acquisition of limited access facilities gave the abutting property owners a right of ingress and egress from their property to the highway. This does not mean, however, that they were entitled to free access at every foot along their road frontage.").

Kimco also cites State v. Peterson, 269 Ind. 340, 381 N.E.2d 83 (1978), in support of its position. In Peterson, the defendants owned a triangular parcel of land that abutted old U.S. 30 and new U.S. 30 but had no established entrance on either. 269 Ind. at 342, 381 N.E.2d at 84. The subject property "was not entitled to full or unlimited access rights to the highways. However it was entitled to access to either or to both, in accordance with governing statutes and case law." Id. (citing Ensley, 240 Ind. at 486, 164 N.E.2d at 348). The State converted new U.S. 30 to limited access which completely extinguished the landowners' access rights along that route, but had no effect on access to old U.S. 30. Id. In the subsequent eminent domain proceeding, the trial court refused the State's tendered instruction that "Loss of access is compensable . . . only when no other reasonable means of access is available to the property." Id. at 341, 381 N.E.2d at 84. This Court affirmed, explaining that

> if the highest and best use before the taking is for one purpose, and because of the access available after the taking, the property was no longer suitable for that use, but was still suitable for a less valuable use, the owner would be entitled to the damages reflecting the diminished value.

11

Id. at 343, 381 N.E.2d at 85. The Peterson Court found the State's instruction "confusing and misleading" without this additional explanation:

> "Other reasonable means of access," as used in this instruction, does not mean access that is reasonable for some other use of the land. Rather, it refers to other access that will permit the land to be used for that purpose regarded as its highest and best use immediately before the take.

Id. at 344, 381 N.E.2d at 85. This language addressed damages from a taking that rendered the land unusable for its highest and best use. Elimination of all access to new U.S. 30 may have met the test. But Kimco did not suffer a compensable taking of access in the first instance. Although the State precluded any new access points along Green River Road, Plaza East's existing drives remained intact, and its use as a shopping center remained. As a matter of law, under Ensley, the redirected traffic flow is not a deprivation of a property right.

Neither the construction of the median alone, nor the hypothetical conversion of Green River Road to a one-way street, would have constituted a compensable taking by the State. Kimco argues, however, that the State's roadway improvements, in conjunction with the appropriation of the 0.154-acre strip and temporary construction easement, taken together, opened the door to consequential damages from impaired traffic flow at the shopping complex. This argument was squarely addressed and rejected in Ensley. Ensley itself involved both the appropriation of a strip of land from the commercial property and the simultaneous construction of a raised divider strip cutting off northbound traffic from the Keystone Entrance. The Court found the two actions to be "separate improvements." 240 Ind. at 488, 164 N.E.2d at 349. The taking of land was compensable, but the effects of the new median were not. Kimco argues that "evidence of impaired access is admissible regardless of whether it is separately compensable." Br. of Appellee 32. We do not agree. Under Ensley, physical takings and coincident roadway improvements are distinct actions, even if concurrent.

**Conclusion**

Given the record testimony assessing the compensable takings at no more than $100,700, the $2,300,000 verdict is excessive as a matter of law. The judgment of the trial court is reversed and the cause remanded for proceedings consistent with this opinion.

12

Shepard, C.J., and Sullivan, J., concur.

Dickson and Rucker, JJ., dissent, believing that the Court of Appeals correctly decided this case.

# Appendix A

**NORTH**

**BEFORE**



**Divider**

**Plaza East Stores**

**Green River Road**

**Parking Area**

**0.154-Acre Strip**

**Entrance/Exit to Plaza East Boulevard**

**Lloyd Expressway**

**AFTER**

**Raised Median**

**Merge Lane**