CANTEEN SERVICE COMPANY OF INDIANAPOLIS, INC.,
Appellant–Plaintiff,

v.

INDIANA DEPARTMENT OF TRANSPORTATION,
Appellee–Defendant.

No. 82A04–0908–CV–466.

Court of Appeals of Indiana.

Aug. 20, 2010.

G. Michael Schopmeyer, Michael E. Dirienzo, Kahn, Dees, Donovan & Kahn, LLP, Evansville, IN, Attorneys for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE[1]

Canteen Service Company of Indianapolis, Inc. ("Canteen") appeals the trial court's judgment in favor of the Indiana Department of Transportation ("INDOT") on Canteen's claim for damages from an alleged inverse condemnation. Canteen raises two issues for our review:

1.  Whether Canteen's previous sale of its property adjacent and contiguous to First Avenue extinguished its right of direct access to First Avenue; and

2.  Whether INDOT's relocation of Canteen's entrance to First Avenue by 210 feet, and by way of a frontage road, amounted to a "taking" under Indiana law.

We hold that the trial court's finding that Canteen had sold fee simple title to the land it used for direct access to First Avenue is supported by the evidence and therefore not clearly erroneous. We also hold that INDOT's reconfiguration of Canteen's access to First Avenue did not amount to a taking under Indiana law. Thus, we affirm the trial court's judgment.

### FACTS AND PROCEDURAL HISTORY

In 1965, the owner of real property located at 2400 North First Avenue in Evansville ("the Property") granted a ten-foot-wide easement along the Property's entire eastern border, parallel and adjacent to First Avenue, to the City of Evansville. Canteen subsequently became the owner of the Property and, in 1976, Canteen agreed to grant the City an additional easement. The 1976 easement covered a forty-five foot wide eastern segment of the Property parallel to the 1965 easement and First Avenue. However, Canteen reserved a five-foot wide, unencumbered strip of property between the 1965 and the 1976 easements.

In the late 1970s, the City built a public frontage road, Beverly Avenue, over and along the 1976 easement. Beverly Avenue lay on the eastern side of Canteen's property. To the east of Beverly Avenue was the parallel First Avenue, and in between the two easements lay the unencumbered five-foot gap. Canteen's property had direct access to First Avenue, across Beverly Avenue and the five-foot gap.

In 2001, Canteen sold to the State, for the sum of $16,550, the fee simple title underlying the 1965 easement, the unencumbered gap between the 1965 and 1976 easements, and the eastern 18.98 feet of the 1976 easement. Canteen's 2001 Warranty Deed "specifically acknowledge[d] that the Real Estate conveyed herein [wa]s conveyed in fee simple and that no reversionary rights whatsoever shall remain with [Canteen]...." Appellant's Addendum Exh. 1 at 1. The real estate Canteen sold to the State included the drive Canteen had used as its direct access to First Avenue.

Sometime after the 2001 sale, INDOT began construction on Project Number DSB–012–2(010) ("the Project"), which

1.  We held oral argument in this case on June 29, 2010.

called for a modification of the intersection of State Road 66 and First Avenue and improvements along First Avenue. Around April of 2006, INDOT's construction on the Project resulted in the removal of Canteen's direct access to First Avenue. INDOT relocated Canteen's entrance about 210 feet to the south, which resulted in Canteen's customers and employees having to drive along more frontage road and past neighboring, competing businesses to access Canteen's site.

On October 15, 2007, Canteen filed its complaint for inverse condemnation against INDOT. Canteen alleged that IN-DOT's elimination of Canteen's direct access to First Avenue—by requiring use of an access or frontage road and by moving Canteen's entrance to First Avenue 210 feet to the south—constituted a taking of Canteen's right of ingress and egress to its property. On December 29, 2008, the court held a bench trial and, after a second hearing on March 30, 2009, the court entered its findings, conclusions, and judgment in INDOT's favor on July 20. In particular, the court concluded that Canteen's 2001 sale of the eastern 33.98 feet of the Property was a "closed transaction[ ] for which just compensation has been paid." Appellant's App. at 9–10. The court also concluded that, even if Canteen had retained a right of access to First Avenue across the land it had sold, the State's relocation of the entrance 210 feet to the south did not amount to a taking under Indiana law. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Canteen appeals the trial court's judgment after the court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). When a court has made special findings, we review the judgment using a two-step process. *Ya-*

*noff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). First, we must determine whether the evidence supports the trial court's findings of fact. *Id.* Second, we must determine whether those findings support the trial court's conclusions. *Id.* Findings will be set aside only if they are clearly erroneous. *Id.* Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.*

In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id.* In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. *Crawley v. Oak Bend Estates Homeowners Ass'n, Inc.*, 753 N.E.2d 740, 744 (Ind.Ct.App.2001) (citation and quotation omitted), *trans. denied.* Rather, we consider only the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* We may affirm the judgment on any legal theory supported by the findings. *Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind.1998).

█ Further, Canteen appeals from a negative judgment. *See Curley v. Lake County Bd. of Elections & Registration*, 896 N.E.2d 24, 32 (Ind.Ct.App.2008), *trans. denied.* It must, therefore, establish that the trial court's judgment is contrary to law. *Id.* A judgment is contrary to law only if the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court. *Id.* Thus, Canteen carries a heavy burden on appeal.

### Issue One: Fee Simple Title

█ Canteen first asserts that the trial court clearly erred when it concluded that

Canteen's 2001 property sale was a bar to Canteen's claim for inverse condemnation. As Canteen's counsel clarified at oral argument, in selling the land to the State Canteen believed it had retained a right to access First Avenue directly across the land sold, and Canteen was surprised by the State's later decision in 2006 to relocate that access. Canteen also contends that the State had an affirmative duty to state expressly in the 2001 Warranty Deed that the sale would extinguish Canteen's direct access to First Avenue.

INDOT responds as follows:

After the State purchased the land in fee simple from Canteen in 2001, Canteen had no land abutting First Avenue, and Canteen's property was located west of Beverly Avenue. As a result of the warranty deed of 2001 and the previous public road easements in favor of the City of Evansville and the construction of Beverly Avenue, Canteen retained no easement or access point abutting First Avenue. Canteen's right of access to the road system after the 2001 deed was by way of Beverly Avenue. Thus Canteen's argument . . . has no factual basis.

Appellee's Br. at 17–18.

We must agree with INDOT. The 2001 Warranty Deed plainly evinces a sale of fee simple title of the land in question to the State. "Fee simple" is defined as "[a]n interest in land that, being the broadest property interest allowed by law, endures until the current holder dies without heirs." Black's Law Dictionary 630 (7th ed. 1999). In other words, Canteen's sale of the fee simple title conveyed all of its right, title, and interest in the land to the State.

Additionally, we cannot agree with Canteen's argument that the State has an affirmative duty to state in the deed that the sale would permanently extinguish Canteen's right of access to First Avenue. As described in more detail below, the State's relocation of the entrance 210 feet directly south did not extinguish Canteen's right of access to First Avenue. Rather, Canteen's right of access to First Avenue after the 2001 sale was by way of a frontage road, Beverly Avenue. The trial court's judgment on this issue was not clearly erroneous.

### Issue Two: Whether a Taking Occurred

■ Even if Canteen had retained an interest in direct access to First Avenue, the relocation of the entrance was not a taking under Indiana law. Our Supreme Court recently considered inverse condemnation actions based on a change in access to property. In particular, the court discussed Indiana law as follows:

Indiana law has specifically addressed the damages to adjacent landowners from reconfigured highways. Many of the principles applicable . . . come from this Court's opinion in *State v. Ensley*, 240 Ind. 472, 164 N.E.2d 342 (1960). . . .

. . . The [*Ensley*] Court explained that "acts done in the proper exercise of governmental powers and not directly encroaching on private property, although their consequences may impair its use or value, do not constitute a 'taking' within the purview of [Indiana Constitution article I, section 21]." *Id.* [at 482, 164 N.E.2d at 346.] "Any injury so caused is deemed to be remote and inconsequential, and thus not compensable in the absence of an express statute to the contrary." *Id.* at 482, 164 N.E.2d at 346–47. Although not phrased in the [federal constitutional] language, the substance of this view anticipated a similar standard: any impaired value derived from some action that does not "encroach upon the property" is not compensable.

... The Court held that the fact that access to [the property owner's] property from Keystone Avenue may have been rendered less convenient by the improved highway did not constitute a taking of a property right. *Id.* [at 486, 164 N.E.2d at 348.] The Court further explained that

What appellees are actually contending here is that they have a property right in the free and unrestricted flow of traffic passing their premises and any impairment of, or interference with, this alleged right must be compensated. They here are attempting to equate this alleged "right" with the property right of ingress and egress. The general rule is that there is no property right of an abutting property owner in the free flow of traffic past his property and thus no compensation can be claimed if traffic is diverted from his premises or made to travel a more circuitous route.

*Id.* at 489, 164 N.E.2d at 350. The Court concluded that because the owners had "no property right in the free flow of traffic past their premises," the construction of the median did not deprive them of a property right and no compensable taking had occurred. *Id.* at 490, 164 N.E.2d at 350.

The principles announced in *Ensley* have since been applied and clarified in a series of eminent domain cases dealing with traffic flow issues and rights of ingress/egress. Each of these cases addresses a unique set of facts, but collectively they affirm the distinction first drawn in *Ensley:* although an elimination of rights of ingress and egress constitutes a compensable taking, the mere reduction in or redirection of traffic flow to a commercial property is not a compensable taking of a property right. *See also State v. Dunn,* 888 N.E.2d 858, 864–66 (Ind.Ct.App.2008) (explaining the

differences between traffic-flow cases and the ingress/egress cases), *trans. denied.*

*State v. Kimco of Evansville, Inc.,* 902 N.E.2d 206, 212–14 (Ind.2009), *cert. denied,* —— U.S. ——, 130 S.Ct. 1136, —— L.Ed.2d —— (2010) (footnote omitted; first alteration original). Reaffirming *Ensley,* the *Kimco* court held that the owners of a shopping center were not entitled to damages resulting "from street reconfigurations that affect traffic flow through the center and prevent expansion of existing points of ingress or egress, but leave existing points in place." *Id.* at 208; *see also Dunn,* 888 N.E.2d at 869 (holding that "the construction of a median in a roadway that causes traffic traveling to and from an abutting property to travel a circuitous route does not constitute a compensable taking under Indiana eminent domain law.").

Among the cases in which a compensable taking occurred that were cited with approval by the court in *Kimco* was *State v. Diamond Lanes, Inc.,* 251 Ind. 520, 242 N.E.2d 632 (1968). *See Kimco,* 902 N.E.2d at 213 n. 8. In *Diamond Lanes,* our Supreme Court discussed the property owner's access to its property following the State's reconfiguration of traffic as follows:

as [the State] admits[,] 'After the ... project was completed, the access to Diamond Avenue was taken and in its place there was substituted access onto a frontage road ... [.]' This substituted access can in no way be equated with the former access to Diamond Avenue for on the [the property owner's] abutting forty (40) feet of old Diamond Avenue is now constructed a solid concrete barrier and retaining wall extending for 125 [feet] from [the property owner's] west property line requiring vehicular traffic in leaving access point No. 3 to go

south from this point to a frontage road, thence turn left (east) for 125 [feet] along the barrier wall and to the end of the barrier wall, thence south downhill to the new main traveled portion of new Diamond Avenue, thence turn right (west) on the new pavement, thereby reversing directions. From access point No. 2, a motor vehicle must proceed south out of the parking lot into the frontage road; downhill across the frontage road, pass the retaining wall, thence turn right (west) onto new Diamond Avenue. To get to Highway 41 from these two access points now requires going approximately one mile further than before.

251 Ind. at 523–24, 242 N.E.2d at 634 (omissions original). In light of those facts, the court held that the claimant-property owner had presented sufficient evidence of a compensable taking where its "access ha[d] been both materially and substantially obstructed and reduced," at least one access point was "completely eliminated," and the substituted access could "in no way be equated with the former access." *Id.* (*cited in Kimco*, 902 N.E.2d at 213 n. 8).

In support of its position on appeal, Canteen relies entirely on our Supreme Court's decision in *Diamond Lanes*. Specifically, Canteen asserts that INDOT's action deprived Canteen of its right of ingress and egress to the Property and, therefore, Canteen is entitled to compensation for that taking. On that question, the trial court concluded as follows:

Canteen has the burden to prove that access to its land would be materially and substantially obstructed by the entrance/exit relocation or that [INDOT] extinguished all rights and easements of ingress and egress to, from, and across the public road abutting the subject property. Canteen has not met this burden.

Appellant's App. at 11–12.

Canteen reads *Diamond Lanes* to mean, as a matter of law, that "the construction of a frontage road is not an adequate substitute for previous direct access to the public road." Appellant's Br. at 9. But *Diamond Lanes* does not stand for a bright-line rule that the creation of a frontage road is necessarily a taking. Indeed, such a rule would be curious in a state where frontage roads are prevalent. To the contrary, as our Supreme Court recently clarified in *Kimco, Diamond Lanes* demonstrates that a change in the means of access to an owner's property may, or may not, amount to denial of the right to ingress and egress. *See Kimco*, 902 N.E.2d at 213 n. 8. A resolution of that question is fact-specific, and, as one might expect, in *Diamond Lanes* those facts were complicated, convoluted, and egregious.

Canteen has not shown that the circumstances in this case are equivalent or comparable to those in *Diamond Lanes*. Indeed, there is nothing in the facts of this case even approaching the difficult and contorted one-mile route described in *Diamond Lanes*. Here, Canteen's entrance to First Avenue was relocated directly south 210 feet, a small fraction of the distance added in *Diamond Lanes*. Further, as the trial court noted, "Canteen continued to use the subject property in the same way and for the same purpose for which it was used before [the] entrance/exit relocation." Appellant's App. at 10. That is, unlike in *Diamond Lanes*, the reconfigured access here can be "equated with the former access," and Canteen's access now is not "materially and substantially obstructed and reduced." *See Diamond Lanes*, 251 Ind. at 523–24, 242 N.E.2d at 634.

We conclude that the reconfiguration of Canteen's access to First Avenue does not constitute a substantial and material impairment of Canteen's right of ingress and egress to its property. As such, the trial court did not err when it concluded that Canteen did not suffer a taking under Indiana law.

### Conclusion

In sum, the trial court's judgment that Canteen's 2001 sale extinguished its right of direct access to First Avenue is not clearly erroneous. Neither did the trial court err when it concluded that Canteen had failed to demonstrate that INDOT's relocation of Canteen's entrance to First Avenue 210 feet to the south materially and substantially obstructed or reduced Canteen's right of access. Hence, we affirm the court's judgment.

Affirmed.

VAIDIK, J., and BROWN, J., concur.