

FILED
Nov 28 2023, 8:42 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Theodore E. Rokita
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
FRANCISCAN ALLIANCE, INC.

Paul D. Vink
Seema R. Shah
Bose McKinney & Evans LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
SCP 2010-C36-018

Nadine E. McSpadden
Andrielle M. Metzel
Taft Stettinius & Hollister, LLP
Indianapolis, Indiana

Ryan Simatic
Biersdorf & Associates, PA
Minneapolis, Minnesota

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| State of Indiana,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>Franciscan Alliance, Inc. f/k/a Sisters of St. Francis Health Services, Inc.; The Market Place at State Road 37, LLC; Hook SupeRX, LLC; SCP 2010-C36- | November 28, 2023<br><br>Court of Appeals Case No.<br>22A-PL-2969<br><br>Appeal from the Johnson Superior Court<br><br>The Honorable Marla K. Clark, Judge<br><br>Trial Court Cause No.<br>41D04-1911-PL-181 |

018 LLC; and Johnson County,
Indiana,

*Appellee-Defendants*

---

**Opinion by Judge Weissmann**
Judge Riley and Senior Judge Robb concur.

**Weissmann, Judge.**

[1] As part of the Interstate 69 construction project, the State seized 0.632 acres of land owned by Franciscan Alliance in Greenwood, Indiana. The seizure consequently altered the traffic flow to Franciscan's remaining land, which was undeveloped, and to an adjacent CVS pharmacy owned by SCP. Franciscan and SCP (collectively "Owners") convinced a jury that the State owed them compensation not just for the seized land but also for the impact from the less convenient access. The jury awarded $680,000 to Franciscan and $1.5 million to SCP.

[2] The State appeals asking if inconvenience associated with traffic flow, as opposed to ingress-egress loss of access, is a compensable injury. The State maintains it is not, and accordingly asks this court to reduce the damage award entered against it to $47,400. The State's argument relies on deep rooted Indiana Supreme Court precedent holding that damages associated with traffic

flow variations are not compensable. Finding this precedent controlling, we reverse and remand for a reduction in the damages award.

## Facts

To transform State Road 37 into part of the I-69 corridor, the State needed to acquire a 0.632-acre commercial strip of land owned by Franciscan (the Strip). The Strip appears in red below. SCP's CVS is located within the bottom-left block labeled "Marketplace":



Exhs. Vol. VI, p. 92.

[4]     Originally, Owners had direct access to State Road 37 via Fairview Road. But after the construction project, Fairview Road will not connect to the new I-69 and will instead be turned into a dead-end cul-de-sac. Consequently, northbound traffic needs to travel another mile to reach Owners' properties, and southbound traffic just over three extra miles.

[5]     As part of the condemnation proceedings, multiple appraisers weighed in on what the State owed the owners for the seizure. The Strip was valued at either $40,500 or $47,400, and according to the State's appraiser, this taking was the only compensable damage. But Owners' appraisers found the inconvenient access changed the properties' viable uses from commercial to residential—significantly reducing their values. Franciscan's appraiser calculated a $3 million loss. And SCP's appraiser landed on a value of $4.4 million because the CVS's income derives from "spontaneous buyers" who need the "quick, in and out" that access to a major roadway provides. Tr. Vol. III, p. 95. The appraiser testified that the loss of easy access would doom the store: "if you don't have access . . . you really don't survive." *Id.* Additionally, a joint report from the appraisers calculated damages at about $1.9 million for both Franciscan and SCP. From these bases, the jury ultimately landed on compensation of $680,000 for Franciscan and $1.5 million for SCP.

## Discussion and Decision

[6] Both Article 1, § 21 of the Indiana Constitution and the Fifth Amendment to the United States Constitution prevent the taking of private property for public use without "just compensation." These provisions "are textually indistinguishable and are to be analyzed identically." *State v. Kimco of Evansville, Inc.*, 902 N.E.2d 206, 210 (Ind. 2009).

[7] At the heart of this dispute is whether Owners are entitled to compensation related to changes in their properties' access. The resolution rests on whether this is merely a change in traffic flow or circuity of travel case, as in *State v. Ensley*, 164 N.E.2d 342 (Ind. 1960) and *Kimco*, 902 N.E.2d 206 (Ind. 2009), or an ingress-egress, loss-of-access case where the property's highest and best use has changed, as in *City of Hammond v. Marina Entertainment Complex, Inc.*, 733 N.E.2d 958 (Ind. Ct. App. 2000).

## I.   Waiver

[8] As a preliminary matter, Owners contend the State waived any challenge to the jury award by failing to properly object to their valuation evidence.[1] We disagree.

---

[1] At oral argument, SCP's counsel likened the waiver arguments here to the invited error doctrine. Oral Arguments online, *State of Indiana v. Franciscan Alliance, Inc. et al.*, at 30:20 (Oct. 4, 2023), https://mycourts.in.gov/arguments. The doctrine of invited error "forbids a party from taking 'advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct.'" *Durden v. State*, 99 N.E.3d 645, 651 (Ind. 2018) (quoting *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005)).

At the outset of the jury trial, the State objected to a jury instruction that it argued improperly implied that increased travel times were compensable damages. Tr. Vol. II, pp. 10-12. The State even obtained the trial court's permission, with no complaint from Owners, to view its objection as continuing throughout the trial. *Id.* at 13-14. Thus, the State properly objected.

Owners also complain that the State should have filed a motion to dismiss the case before the jury trial began, noting there was little point in holding a trial if the vast majority of damages turned out to be non-compensable. But Owners identify no requirement for the State to have done so to preserve its valuation argument. We also note that, prior to the trial, the State filed a motion in limine to prevent owners from presenting their valuation evidence relating to the loss of access. Appellant's App. Vol. II, p. 18.

Accordingly, we find no waiver of the State's argument.

## II.   Damages

### *Circuity of Travel or Traffic Flow Damages*

A party may not obtain damages in an eminent domain action resulting from a claim that "traffic is diverted from [the] premises or made to travel a more circuitous route." *State v. Ensley*, 164 N.E.2d 342, 350 (Ind. 1960). This general rule has been reaffirmed many times. *See, e.g.*, *State v. Kimco of Evansville*, 902 N.E.2d 206, 212-16 (Ind. 2009) (reaffirming *Ensley* in the context of a shopping mall whose traffic flow was negatively affected by street construction); *AAA Fed. Credit Union v. Ind. Dep't of Transp.*, 79 N.E.3d 401, 405 (Ind. Ct. App.

2017) (holding "an abutting landowner has no cognizable property right in the free flow of traffic past his property ('the traffic-flow rule')"); *State v. Dunn*, 888 N.E.2d 858, 864-66 (Ind. Ct. App. 2008) (noting "our Supreme Court has made clear that a taking does not occur where ingress and egress is made more circuitous and difficult" (internal quotation omitted)).

[13] The Indiana Supreme Court established the traffic flow rule in 1960 under similar facts as presented here. *State v. Ensley*, 164 N.E.2d 342 (Ind. 1960). Though we must follow the precedent from *Ensley*, society has shifted dramatically since the first applications of the rule. In 1960, customers had no choice but to drive the more circuitous traffic route to obtain necessary goods and services. Today customers can, and often do, avoid inconvenient trips by shopping online. For instance, in *State v. Kimco of Evansville*, the shopping mall'S loss of easy access to its premises led to a 40% drop in tenants. 902 N.E.2d at 209. Because of changing societal habits, the factual distinction between the legal concepts of a change in traffic flow versus ingress and egress has become a difficult basis on which to base a resolution. But the reevaluation of this decades-old rule is a role left for our Supreme Court. The policy justifications for this rule have long been recognized:

> The propriety of such an allowance in any case where only an indirect access is cut off, the landowner being left with other, although more circuitous, indirect ways of approaching the highway, *seems doubtful,* since obviously if the principle were extended to its logical limits almost every member of the public could claim compensation on the theory that the convenience of the highway was reduced by closing any means of access.

*State v. Tolliver*, 205 N.E.2d 672, 676 (Ind. 1965) (emphasis in original) (internal quotation omitted).

[14] This case is a textbook illustration of the traffic flow rule. First and foremost, Owners still have access to the new I-69. *AAA Fed. Credit Union*, 79 N.E.3d at 405-06 (collecting cases which denied compensation where "the points of ingress and egress over the land remain unaffected"). Granted, the construction project will add approximately 1 to 3 miles of travel distance to reach their property. But this Court has already held that the increase of 4 miles in travel distance is not severe enough to be considered an effective elimination of ingress and egress rights. *Green River Motel Mgmt. of Dale, LLC v. State*, 957 N.E.2d 640, 645 (Ind. Ct. App. 2011) (holding a 4.5-mile increase in travel distance to a motel was not a compensable taking because motorists could still access the property, albeit through "a more circuitous route").

[15] More recently, in a related case concerning the Market Place property on which the CVS sits, a panel of this Court found that essentially the same factual scenario "falls squarely within the traffic-flow-rule cases." *State v. The Mkt. Place at State Road 37 LLC*, No. 22A-PL-2765, 211 N.E.3d 539, *3 (Ind. Ct. App. 2023) (mem.), *trans. denied*. The State argued that the owner of the Market Place property could not introduce evidence of any damages from the closure of Fairview Road because "the closure of the intersection is not a 'taking' for which Market Place is entitled to compensation." *Id.* at *1. This Court agreed that business would suffer from the I-69 traffic flow changes but found those damages non-compensable because "an abutting landowner has no cognizable

property right in the free flow of traffic past his property." *Id.* at *2 (citing *AAA Fed. Credit Union*, 79 N.E.3d at 405). Given that we are confronted here with essentially the same facts as the panel in *Market Place*, we see no justification for reaching a different result.

### Change in Highest and Best Use

Owners argue that this case is an exception to the traffic flow rule because there is a change in their property's "highest and best use." Owners support this argument with a decades old case, itself based on shaky precedent—*City of Hammond v. Marina Entertainment Complex*, 733 N.E.2d 958, 960 (Ind. Ct. App. 2000).

In *Marina Entertainment*, this court ruled damages could be awarded where a city closed a road just north of the landowners' property resulting in 1.7 miles of increased travel distance. In reaching this conclusion though, the *Marina Entertainment* panel ignored controlling precedent and relied instead on a 1945 Indiana Supreme Court decision, *State v. Ahaus*, 63 N.E.2d 199, 201 (Ind. 1945). But our Supreme Court had already rejected the applicability of *Ahaus* to a case involving an impaired right to access land. *Ensley*, 164 N.E.2d at 349 (emphasizing that *Ahaus* involved "interference in the *use* of appellees' property"). In doing so, the Indiana Supreme Court confirmed the "general rule . . . that there is no property right of an abutting property owner in the free flow of traffic past his property and thus no compensation can be claimed if traffic is diverted from his premises or made to travel a more circuitous route." *Id.* at 350 (collecting cases). As the *Marina Entertainment* decision appears to rest on a

branch of eminent domain law pruned away over half a century ago, we decline to follow it today. *See Wellman v. State*, 210 N.E.3d 811, 816 n.4 (Ind. Ct. App. 2023) ("Indiana does not recognize horizontal stare decisis.").

[18] In summary, this case cleanly fits within the ambit of our existing caselaw on circuity of travel and traffic flow, and thus the $2.2 million judgment is erroneous.

## III. Attorney Fees

[19] Next, the State raises an additional argument that the trial court erred in awarding attorney fees to both Owners because the relevant statute only contemplates awarding costs to one defendant. But our above analysis on compensable damages renders this point moot. As only the value of the Strip is compensable, and the Strip was solely owned by Franciscan, there are no longer any damages for SCP to recover. Thus, SCP may no longer recover attorney's fees under Indiana Code § 32-24-1-14(b) as the recovery of a "defendant's litigation expenses, including reasonable attorney's fees" is limited to when "the amount of damages awarded to the defendant by the judgment . . . is greater than the amount specified in the last offer of settlement made by the plaintiff."

## IV. Prejudgment Interest

[20] Lastly, the State argues that the trial court applied the wrong statute in setting the amount of prejudgment interest. The trial court applied 8% interest as allowed by Indiana's eminent domain statute. Ind Code § 32-24-1-11(d)(6). But the State argues the court should have applied 6% interest as set forth in the

more general statute governing government interest payments on final judgments. Ind. Code § 34-54-8-5.

[21] "As a matter of interpretation, general statutes yield to more specific statutes." *State v. Neukam*, 189 N.E.3d 152, 155 (Ind. 2022) (citing *Grether v. Ind. State Bd. of Dental Exam'rs*, 159 N.E.2d 131, 134 (Ind. 1959)). Thus, the fact that Indiana Code § 32-24-1-11 is located within the eminent domain article of the Indiana Code strongly implies that the Legislature intended for it to govern eminent domain matters.

[22] The State cites no cases applying its chosen statute in the eminent domain context. In contrast, a panel of this Court has endorsed applying a more specific interest rate payment statute when two statutory frameworks conflict. *Glick v. Dep't of Com.*, 387 N.E.2d 74, 77-78 (Ind. Ct. App. 1979) (applying the Indiana Tort Claims Act's then existing interest payment framework—instead of more general statutes—in part, because the statute was "the more specific and detailed treatment of" the relevant area of law).

[23] Accordingly, the trial court did not err in applying the prejudgment interest framework in Indiana Code § 32-24-1-11. But on remand, the amount of prejudgment interest owed will need to be recalculated due to the change in the underlying jury award.

## Conclusion

[24] Given our earlier holding that the jury award given to Franciscan and SCP wrongly included non-compensable damages, we reverse and remand with

instructions that the trial court vacate the judgment in favor of SCP. The court shall enter judgment for Franciscan and recalculate the prejudgment interest consistent with this opinion.

Riley, J., and Robb, S.J., concur.